Dukbee, C. J.
 

 This is an action on tbe case to recover damages for unskilful and negligent surgical treatment. The declaration sets forth that the plaintiff, having received an injury in his hand and fingers for which he was in need of surgical and medical treatment and care, gave himself into the charge of the defendant corporation, who were owners of a large hospital where they were in the habit of receiving persons needing such treatment and care, and of treating and caring for them for hire; and that, in consideration of being so received and treated with skill and care, he promised to pay the defendant corporation a reasonable compensation therefor, and that the defendant corporation, in consideration thereof, received him and promised to supply him with such surgical and medical treatment, skill, and attention as were necessary for the care and cure of his injuries. The declaration also sets forth that the corporation, its officers, agents, and servants, regardless of its and their duty, neglected properly to care for the plaintiff and his injuries, or to supply such medical and surgical treatment as was needed for their care and cure; but on the contrary conducted so carelessly, improperly, and unskilfully, that his hand and fingers by reason thereof became ulcerated and gangrenous, and likewise his arm, so that his life was endangered and his arm had to be amputated at or near the shoulder, &c. The declaration also contains counts charging the defendant corporation with a neglect of duty in other ways, and especially in that, regardless of the obligation incumbent on it, it neglected to provide careful, competent, and skilful officers, agents, and servants to care for, attend to, and treat him and his injuries.
 

 On the trial to the jury the plaintiff submitted testimony to show that on the 3d of October, 1873, he had two fingers of his right- hand accidentally sawed off by a circular saw in a lumber yard where he was employed
 
 ;
 
 that he was immediately taken to the hospital, where he was received by the superintendent, and committed to the care of the surgical interne, who etherized him and undertook to dress his
 
 wound;
 
 that a profuse hemorrhage occurred, being occasioned, as the plaintiff claims, by the negligence or unskilfulness of the interne ; that the interne, after repeatedly trying in vain to arrest the hemorrhage by ligating the arteries, applied a tourniquet to the plaintiff’s arm so tightly
 
 *425
 
 as to stop circulation, and kept it applied for nearly seventeen hours, before the arrival of a surgeon who was skilful enough to ligate the arteries; that the plaintiff, in consequence, suffered excruciating pain, his arm being enormously swollen, and that afterward his arm mortified so that he had to have it amputated, and did have it amputated, after leaving the hospital, just below the shoulder joint.
 

 The plaintiff also submitted testimony to show that his injury was such, especially in view of the hemorrhage, that some one of the experienced surgeons, attendant on the hospital, should have been immediately summoned; but that, in fact, no one of them was sent for until after nearly nine hours, and no one came until after nearly seventeen hours, though there were four, subject to call, residing and having their offices within a mile of the hospital. Further testimony was introduced by the plaintiff showing the treatment which he received both while he was in the hospital and after he left; showing the degree of care which was used in selecting the interne, and showing the charter of the corporation and the rules and regulations in force in 1873. It appeared that the plaintiff was taken from the hospital by his friends against the advice of the surgeon, and that when he left, October 22, 1873, a bill for board and attendance at |8.00 per week, amounting to $21.71, was presented to him in behalf of the defendant corporation, which was subsequently paid.
 

 For the defendant corporation testimony was introduced to explain the management of the hospital generally, as well as the circumstances of the case of the plaintiff, and to show that there was no want of reasonable care, skill, and diligence on the part of the defendant corporation. Testimony was also introduced to show that the hospital was administered as a charity; that its income was derived mainly from its endowments and from voluntary contributions; that the physicians and surgeons attendant on the hospital, and the medical and surgical internes, gave their services without compensation, except that the internes, who were required to be constantly in attendance, had their board and lodging in the hospital, and that the bill which was rendered to the plaintiff was designed only to cover board, washing, warmth, and the services of nurses and ward tenders.
 

 After the introduction of the testimony and the argument of
 
 *426
 
 the case to the jury, the court instructed the jury that no testimony had been submitted which entitled the plaintiff to a ver-diet for damages, and directed the jury to return a verdict for the defendant corporation. The ground of the instruction was, that jthe defendant corporation being the dispenser of a public charity, ¡¡and being dependent for its support, in a great measure, on voluntary grants and contributions, was, for reasons of public policy, exempt from liability for any negligence or unskilfulness on the part of its trustees, agents, servants, physicians, or surgeons, or of its medical or surgical internes; and that if any patient in the hospital suffered injury in consequence of any such negligence or unskilfulness, his remedy, if any he had, was to prosecute the person or persons who were directly chargeable with the negligence or unskilfulness, and not to bring his action against the defendant corporation,
 

 The plaintiff contends that this instruction was erroneous, and that he was entitled to recover,
 
 first,
 
 because the defendant corporation delivered him over to an incompetent and unskilful interne, in selecting whom for his place the corporation did not exercise proper care ;
 
 second,
 
 because the interne, acting within the scope of his appointment, unskilfully and negligently cared for him ;
 
 third,
 
 because the interne caused his hemorrhage by his unskilfulness and negligence, and
 
 fourth,
 
 because the plaintiff being in a critical condition, it was the duty of the interne, under one of the rules of the hospital, to send immediately for some one of the attendant surgeons, and the duty of the corporation, under its charter, having established the rule, to put it in execution.
 

 The court, in giving its charge to the jury, was guided by
 
 McDonald
 
 v.
 
 The Massachusetts General Hospital,
 
 120 Mass. 432. In that case a hospital patient sued the corporation for unskilful surgical treatment by a house pupil, a functionary similar to a surgical interne. There was no evidence of any want of care in selecting the house pupil, and the court held that without such evidence the action could not be maintained, and at the same time strongly intimated an opinion that it could not be maintained even with such evidence, for the reason that the corporation could not be held to have agreed to do more than furnish hospital accommodations, which the plaintiff had had, and also
 
 *427
 
 for tbe further reason that any judgment recovered against the corporation could only be satisfied out of funds which, being dedicated to the charity, could not be lawfully used to pay it.
 

 The Supreme Judicial Court of Massachusetts, in the case above cited, referred to
 
 Holliday
 
 v.
 
 St.
 
 Leonard, 11 C. B. N. S. 192, decided by the Court of Common Bench in 1861, as authority for the point that the corporation was not liable to be sued for the tort of the house pupil without proof of negligence in selecting him. The doctrine enounced in
 
 Holliday
 
 v.
 
 St. Leonard
 
 is, that a corporate or
 
 quasi
 
 corporate board or body, having a public trust or duty to discharge gratuitously, is not liable for the torts of its servants or employees if it is personally without fault. The plaintiff calls our attention to cases in which
 
 Holliday
 
 v.
 
 St. Leonard
 
 has been qualified or impugned.
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 11 H. L. 686; L. R. 1 H. L. 93;
 
 Forman
 
 v.
 
 Mayor of Canter
 
 bury, L. R. 6 Q. B. 214;
 
 Coe
 
 v.
 
 Wise, L.
 
 R. 1 Q. B. 711; 5 B.
 
 &
 
 S. 440, 458. These cases hold that a board or body having work to do for the public gratuitously are liable for the torts of their servants or employees, the same as a private business corporation, provided they have funds or are in receipt of an income out of which a judgment against them can be satisfied.
 
 Winch
 
 v.
 
 The Conservators of the
 
 Thames, L. R. 7 C. P. 458 ; 9 Ib. 378. The authority of
 
 McLonald
 
 v.
 
 The Massachusetts General Hospital,
 
 in so far as it rests upon
 
 Holliday
 
 v.
 
 St.
 
 Leonard, is seriously impaired by these cases ; and the question arises whether it might not have been better decided on the other grounds suggested in the opinion of the court.
 

 The other grounds suggested were two. The
 
 first
 
 was that the corporation could not be presumed to have agreed to do more than furnish hospital accommodations, and these the plaintiff had had. It is quite conceivable that a corporation might not agree to do more than furnish hospital accommodations, leaving the patient to find his own physician or surgeon. In such a case the corporation would plainly not be liable for the torts of the physicians or surgeons; for in such a case they would not be its servants and it would not have assumed any responsibility in their selection. But that is not this case. Here the physicians or surgeons are selected by the corporation or the trustees. But does it follow from this that they are the servants of the corpo
 
 *428
 
 ration? We think not. If A. out of charity employs a physician to attend B. his sick neighbor, the physician does not become A.’s servant, and A., if he has been duly careful in selecting him, will not be answerable to B. for his malpractice. The reason is, that A. does not undertake to treat B. through the agency of the physician, but only to procure for B. the services of the physician. The relation of master and servant is not established between A. and the physician. And so there is no such relation between the corporation and the physicians and surgeons who give their services at the hospital. It is true the corporation has power to dismiss them ; but it has this power not because they are its servants, but because of its control of the hospital where their sex-vices are rendered. They would not recognize the right of the corporation, while retaining them, to direct them in their treatment of patients.
 

 But though the relation of master and servant cannot be said to exist between the hospital and the physicians and surgeons attendant on it, the hospital does nevertheless assume a responsibility, in that it uses its own judgment, or that of its trustees, in selecting them, and impliedly, therefore, undertakes to exercise reasonable care to get such as are skilful and trustworthy in their professions. A patient has a right to rely on the exercise of such care, and consequently if, through the neglect of the hospital to exercise it, he receives an injury, he is entitled to look to the hospital for indemnity, unless the hospital enjoys some extraordinary exemption from liability.
 

 In the case at bar, however, the injury was not received from a physician or surgeon, but from a surgical interne, and it may be that a surgical interne stands on a different footing. There are some cases of minor importance in which the internes are allowed to act as physicians and surgeons ; and in such cases I think that their relation to the corporation does not differ from that of a visiting physician or surgeon. But the internes act in still another capacity. The corporation undertakes to furnish physicians and surgeons for all kinds of eases, including the most critical. It has a regular staff of physicians and surgeons. But inasmuch as these are not, like the internes, constantly in attendance at the hospital, they must frequently be sent for. The' corporation undertakes to send for them, and of course it must do
 
 *429
 
 it through an agent. Tbe internes are tbe persons appointed to perforin this duty for it. A rule of the hospital prescribes that in all cases requiring immediate and important action, in all doubtful oases, and in all cases requiring an immediate operation, the interne shall send for the surgeon of the day, and, if he cannot be found, for one of the other surgeons. Here then we have the relation of principal and agent, or master and servant. If the interne neglects to call the surgeon in the class of cases desig-! nated, his neglect is the neglect of the corporation. Now the plaintiff contends that his injury was such that under the rule a surgeon should have been immediately sent for, and that the in-5 terne’s neglect to do it cost him his arm. He also contends that! the corporation did not use proper care in selecting the interne, who was incompetent for his position, and thereby he suffered the injury complained of. He contends that he was entitled to recover on both these grounds, and if the evidence was sufficient to establish them, we think that he was entitled to recover on both grounds, unless the hospital enjoys some peculiar immunity.
 

 This brings us to the important question whether the hospital does enjoy any peculiar exemption from liability. The claim that it enjoys such an exemption rests upon two grounds: to wit, on the ground of public policy, and on the ground that the hospital had no funds except such as are exclusively dedicated to the charitable uses for which it was established, and which therefore cannot be applied to indemnify a patient who has been injured by the negligence or malpractice of a physician or surgeon, or of a medical or surgical interne.
 

 The first ground is the ground on which the plaintiff was nonsuited. The argument is that hospitals, like the Rhode Island Hospital, are a public benefit; but if they are liable for the torts of the physicians or surgeons attendant on them, or of the medical or surgical internes, or of their nurses and other servants, people will be discouraged from voluntarily contributing to their foundation and support, and therefore public policy demands that they shall be exempted from liability. In our opinion the argument will not bear examination. The public is doubtless interested in the maintenance of a great public charity, such as the Rhode Island Hospital is ; but it also has an interest in obliging every person and every corporation which undertakes
 
 *430
 
 the performance of a duty to perform it carefully, and to that extent, therefore, it has an interest against exempting any such person and any such corporation from liability for its negligences. The court cannot undertake to say that the former interest is so supreme that the latter must be sacrificed to it. Whether it shall be or not is not a question for the court, but for the legislature.
 

 'The second ground is one of the grounds suggested in
 
 McDonald
 
 v.
 
 Massachusetts General Hospital.
 
 No authority was cited in that case except
 
 Holliday
 
 v.
 
 St. Leonard,
 
 previously mentioned. The defendants, however, have referred us to
 
 Feoffees of Heriot's Hospital
 
 v.
 
 Ross,
 
 12 Cl.
 
 &
 
 Fin. 507, which is very much in point. Heriot’s Hospital was an eleemosynary foundation created under a will for the benefit of fatherless boys. The suit was in behalf of a boy who was alleged to have been illegally refused the benefit of it. The question was whether the action would lie against the trustees as such for damages for the refusal. The House of Lords held that the plaintiff had no right to indemnity out of the trust funds. Lord Cottenham was of the opinion that to give damages out of the trust fund would be to divert it from its proper purpose. Lord Campbell thought it would be contrary to reason, justice, and common sense to sanction the suit.
 
 “
 
 Damages are to be paid,” he said, “ from the pocket of the wrong-doer, not from a trust fund.” Lord Brougham strongly expressed the same opinion.
 

 The authority relied on to support the decision was a decision of the House of Lords in
 
 Duncan
 
 v.
 
 Findlater,
 
 6 Cl.
 
 &
 
 Fin. 894. There the action was against trustees appointed under a public road act, to charge them in their
 
 quasi
 
 corporate capacity for an injury occasioned by the negligence of the men in making the road, and the House of Lords held that the action was not maintainable. The case resembles
 
 Holliday
 
 v.
 
 St. Leonard,
 
 and like it, in the light of the later decisions, it has no value as a precedent for any case where there are funds which can be applied to the payment of damages.
 

 We have previously, in this opinion, cited the cases which limit the authority of
 
 Holliday
 
 v.
 
 St. Leonard.
 
 It may help us to consider the. leading case more in detail. The leading case is
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 11 H. L. 686, decided in the House of
 
 *431
 
 Lords in-1865. Tbe action was against a
 
 quasi
 
 corporate board charged with tbe duty of keeping certain docks in order, and authorized in consideration thereof to collect tolls and dock rates. Tbe board bad no interest in tbe rates and tolls, being bound to expend them on tbe docks or in tbe payment of a debt incurred in building them. A vessel belonging to the plaintiff was injured in entering tbe docks in consequence of a neglect to keep them fit for navigation. Tbe House of Lords decided that tbe action for tbe injury would lie against tbe board, tbe plaintiff being entitled to indemnity out of tbe public fund. Tbe case was decided with great deliberation, tbe judges being summoned in. Mr. Justice Blackburn, alter advisement, delivered tbe unanimous opinion of all tbe judges who beard tbe case. The opinion was that such corporations, though acting without reward, are in their very nature substitutions, on a large scale, for individual enterprise, and that in tbe absence of • anything in tbe statutes which create them showing a contrary intent, it must be held that their liability was intended to be, to tbe extent of their corporate funds, tbe same as that of individual owners of similar works. He also remarked that, if tbe true interpretation of tbe statute is that it casts a duty on tbe corporation, not only to construct tbe works, but also to use reasonable skill and care in their construction and in their maintenance for use, there is nothing illogical in bolding that those who are injured by a neglect of tbe duty may maintain an action against tbe corporation, and be indemnified out of tbe funds vested in it by tbe statute. Tbe case of
 
 Duncan
 
 v.
 
 Findlater
 
 was cited by Mr. Justice Blackburn in bis opinion, and the language there used by Lord Cottenbam, which was chiefly relied on as authority for tbe decision of
 
 Feoffees of Heriot’s Hospital
 
 v.
 
 Ross,
 
 was expressly disapproved. It is remarkable, however, that tbe ease of
 
 Feoffees of Heriot’s Hospital
 
 v. Ross, though cited by counsel, does not seem to have attracted tbe attention of either Mr. Justice Blackburn or of tbe three learned lords who delivered concurring opinions.
 

 The language used by Lord Cottenbam in
 
 Duncan
 
 v.
 
 Findlater
 
 was criticised by Lord Westbury more pointedly even than by Mr. Justice Blackburn. He said in effect that be supposed Lord Cottenbam regarded tbe funds of statutable boards as being in tbe nature of trust property, and bad tbe idea that trust prop
 
 *432
 
 erty would be protected in equity from seizure and sale on execution for tbe torts of the trustees. He expressed the opinion that this belief was erroneous. “ It is much more reasonable,” he says, “ in such a case, that the trust or corporate property should be amenable to the individual injured, because there is then no failure of justice, seeing that the beneficiary will always have his right of complaint and- his title to relief against the individual corporators who have wrongfully used the name of the corporation.”
 

 In all the English cases decided since the decision of
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 which we have seen, the cases of
 
 Duncan
 
 v.
 
 Findlater
 
 and
 
 Holliday
 
 v.
 
 St. Leonard,
 
 as authority for the broader doctrines declared in them, are uniformly regarded as overruled.
 

 In view of these later decisions -the question here is, whether a charitable corporation, like the Rhode Island Hospital which holds its property for the charity, is more highly privileged than a corporation created for public purposes, which holds its property for such purposes; whether, in fact, because it holds its property for the charity, it is relieved from all responsibility for the torts or negligences of its officers, trustees, agents, or servants. We have come to the conclusion, after much consideration, that it is not. We understand the doctrine of the cases which we have just been considering to be this: that where there is duty, there there is,
 
 primd facie
 
 at least, liability for its neglect; and that when a corporation or
 
 quasi
 
 corporation is created for certain purposes which cannot be executed without the exercise of care and skill, it becomes the duty of the corporation or
 
 quasi
 
 corporation to exercise such care and skill; and that the fact that it acts gratuitously, and has no property of its own in which it is beneficially interested, will not exempt it from liability for any neglect of the duty, if it has funds, or the capacity of acquiring funds, for the purposes of its creation, which can be applied to the satisfaction of any judgment for damages recovered against it. We also understand that the doctrine is that the corporate funds can be applied, notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them. We do not understand, however, that the corporate property is all equally applicable. For in
 
 *433
 
 stance, in the case of
 
 Mersey Docks
 
 v. Gibbs, it was not decided that the docks themselves could be resorted to, but only the un-applied funds which the board then had or might afterwards acquire. So in the case at bar; it may be that some of the corporate property, the buildings and grounds for example, is subject to so strict a dedication that it cannot be diverted to the payment of damages. But however that may be, we understand that the defendant corporation is in the receipt of funds which are applicable generally to the uses of the hospital, and, following the decision in
 
 Mersey Docks
 
 v. Gibbs, we think a judgment in tort for damages against the corporation can be paid out of them. Indeed, we cannot see why these funds are not as applicable to the payment of damages for tort as to the payment of counsel for defending an action for such damages. Both payments are to be regarded as incident to the administration of the trust.