Thomas DePaola *vs.* The National Insurance Co.

Thomas DePaola *vs.* The Humboldt Fire Insurance Co.

JUNE 29, 1915.

Present:    Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Fire Insurance. Waiver. Proof of Loss.*

In an action upon a standard form of policy of fire insurance which provided that the ascertainment of loss should be made by the insured and the company, or if they differed then by appraisers, as provided, and the amount of loss having been determined the sum for which the company was liable should be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of loss had been received by the company, it appeared that insured had filed proofs of loss, in accordance with the requirements of the policy. More than sixty days thereafter action was commenced and during that time no reply was received by insured:—

*Held*, that the insurer waived all other steps on the part of insured in the process of adjusting the loss and after the expiration of sixty days from the filing of the proof he was entitled to maintain the suit.

(2)   *Fire Insurance.   Pleading.*

In an action on a policy of fire insurance where the declaration alleged that the plaintiff "has done, performed and fulfilled all things on his part to be done, performed and fulfilled in order to entitle him to recover said loss under said policy," and it appeared that plaintiff had filed proof of loss, it was incumbent upon the defendant if it did not intend to regard this amount as the loss to have taken the next step in the process of adjustment, and the statement that plaintiff had done all the things required by him to be done will not involve any allegations other than that he has furnished proofs of loss.

(3)   *Fire Insurance.   Pleading.*

In an action on a policy of fire insurance it is sufficient if enough is set forth to show a right to recover.

(4)   *Fire Insurance.   Pleading.   Surplusage.*

In a declaration on a policy of fire insurance an allegation of denial of liability on the part of defendant is surplusage and may be rejected.

(5)   *Fire Insurance.   Location of Property Insured.   Misdescription.*

Where the description of the location of property in a policy of fire insurance, which description was filled out by the agent of the company, after he had visited the premises, contained facts by which the building could be identified, the question was properly submitted to the jury, as to whether or not the property injured was the property insured.

(6)   *Fire Insurance.   Misdescription.*

If property is otherwise sufficiently identified, a misdescription as to location will not avoid the policy.

(7)   *Fire Insurance.   Misdescription.   Reformation.*

Where property is sufficiently identified no reformation in equity is necessary.

Assumpsit.   Heard on exceptions of defendant and over-ruled.

Johnson, C. J.   These are actions in assumpsit upon policies of insurance.   The declarations are alike in each case, and to each declaration the defendants have respectively pleaded the general issue.

The allegations in the declarations are that the plaintiff was the owner of a stock of merchandise, store furniture, and fixtures, all contained at or in the frame two-story

shingled roof building occupied for dwelling and store pur-
poses, situate at seventy-eight and one-half Pierce Street,
Westerly, R. I.; that the defendants in consideration of a
premium of money, issued their policies of insurance, each
in the sum of five hundred dollars on the above-mentioned
articles belonging to the plaintiff while contained in said
frame building, number seventy-eight and one-half Pierce
Street. The plaintiff avers loss by fire within the time
limited by the policies and giving due notice and furnishing
proofs of loss in accordance with the terms of the policies.
The plaintiff also avers that he has done, fulfilled and per-
formed all things on his part to be done, fulfilled and per-
formed in order to entitle him to recover said loss under
said policies. The plaintiff further avers that the defendants
thereafterwards denied any liability to the plaintiff under
said policies of insurance by reason or on account of the
loss and damage by him sustained to said property in con-
sequence of the aforesaid fire.

The cases came on for trial in the Superior Court before
Mr. Justice Stearns, with a jury, December 8, 1910, and by
agreement of counsel were tried together.

At the trial, the plaintiff introduced in evidence the
policies of insurance. Each policy was in the standard
form prescribed by statute in the State of Rhode Island, and
each policy contained the following provisions:

"This company shall not be liable beyond the actual
cash value of the property at the time any loss or damage
occurs, and the loss or damage shall be ascertained or
estimated according to such actual cash value, with proper
deduction for depreciation, however caused, and shall in no
event exceed what it would then cost the insured to repair or
replace the same with material of like kind and quality;
said ascertainment or estimate shall be made by the insured
and this company, or, if they differ, then by appraisers, as
hereinafter provided, and the amount of loss or damage
having been thus determined, the sum for which this com-
pany is liable pursuant to this policy shall be payable

sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described.

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

The plaintiff also introduced evidence proving the destruction of the described property by fire October 12, 1909.

It also appears from the evidence that the policies both insured the same stock of goods from the 12th day of July, 1909, at noon, to the 12th day of July, 1910, at noon; that the property insured was damaged by fire which occurred October 12, 1909, at about eleven o'clock P. M.    It further appeared that proofs of loss in each case were filed, and they are in evidence as exhibits in the case.

The proof of loss sent to The National Insurance Company bears a stamp showing that it was received by The National Insurance Company, November 3, 1909, and that sent to the Humboldt Insurance Company was sworn to on the first day of November, 1909.    The proofs of loss were sent by registered mail and the registry receipts showing the signatures of the defendants are in evidence.

The plaintiff also testified that Mr. Chester, the agent through whom the insurance was placed, before the policies were issued, came to the plaintiff's store and looked over the stock carefully; that after the fire he went to the office of Mr. Chester and notified him of the fire; that Mr. Chester came to the place where the fire occurred, looked at it and told the plaintiff that he would write to the companies and let him know what the answer would be; that he went to Mr. Chester's office two or three times a week for ten or twelve weeks and that Mr. Chester at each visit stated that he hadn't heard from the companies and that as soon as he did hear he would let the plaintiff know.    The plaintiff further testified that he had received no communication from the companies after having sent the proofs of loss, and that the defendants had never paid him any money to settle the claims against them upon the policies.

At the conclusion of the testimony the defendants moved that the justice presiding at the trial direct the jury to return a verdict for the defendants.    The motion was denied and the defendants duly excepted.

After the denial of said motion the defendants presented to the court certain requests to charge which appear on pages 80 and 81 of the transcript of testimony.    Requests

numbered 1, 3, 4, 5, 6 and 7 were denied and the defendants duly excepted. The justice presiding at the trial in his charge instructed the jury that the plaintiff had shown a valid reason why arbitration had become unnecessary or impossible, to which instruction the defendants then and there duly excepted.

The requests denied are as follows:

1. "In order to recover it is incumbent on the plaintiff to prove either that there has been an agreement between the companies and himself as to the amount of the loss or damage or that the amount of the loss or damage has been determined by arbitration in accordance with the provisions of the policy or that the company has by its own act waived such arbitration."

3. "The omission of the company to reject a proof of loss does not amount to a waiver of arbitration."

4. "The fact that the company has not rejected the proof of loss received by it does not permit the plaintiff to recover without showing an adjustment of the amount of loss, either by agreement or by arbitration."

5. "The plaintiff has averred that the defendant companies denied liability. Upon the testimony, neither of the companies has denied liability."

6. "The evidence discloses no waiver by the companies of their right to have the amount of the loss determined by arbitration."

7. "The defendant in each case is entitled to a verdict."

The jury returned a verdict for the plaintiff in each case for $473. The defendants duly filed bills of exceptions in each case, and the cases are before this court on said bills of exceptions.

Defendants' counsel say in their brief that the "Questions raised by these exceptions and the only questions which the defendants now desire to urge are,—1. Whether or not the plaintiff by reason of the failure to prove an adjustment of the loss either by agreement or by arbitration without a waiver of such adjustment is entitled to recover, and 2.

Whether or not the plaintiff by reason of the evidence that the property insured was at the time of the issuing of the policy and of the fire, in a location different from that averred in the declaration and set forth in the policies, is entitled to recover."

Counsel argue that "an ascertainment or estimate of the loss in accordance with the terms of the policy either by agreement between the insured and the company or if they differ then by appraisers, is unless waived, a condition pre-cedent to the right of the insured to maintain an action."

The defendants' counsel cite four cases in support of this contention. In the first of these, *Elliott* v. *Royal Exchange Ins. Co.*, L. R. 2 Exch. 237, the plea alleged that "a differ-ence arose between the plaintiffs and defendants touching the loss which the defendants had always been willing to refer in the manner mentioned in the articles, whereof the plaintiff had notice, but that the plaintiff refused, and that the difference had never been submitted to arbitration, nor the alleged loss or damage adjusted." Three of the judges held that under those circumstances arbitration was a condition precedent, and one judge dissented.

In *Old Saucelito, &c. Co.* v. *Ins. Co.*, 66 Cal. 253, it appears that a difference arose as to the amount of the loss and the case shows that the plaintiff in his complaint stated that a difference had arisen.

The other California case, *Adams* v. *Southern British, &c. Ins. Co.*, 70 Cal. 198, is similar. The statement of facts shows that: "Subsequent to the fire differences arose between the insured and payee under the policy on the one hand, and the defendant on the other, touching the amount of the loss."

In *Grady* v. *Home Fire and Marine Ins. Co.*, 27 R. I. 435, the parties entered into an agreement of submission in accordance with the terms of the policy. The arbitrators selected appointed an umpire and proceeded with the appraisal. An award in writing was signed by the two arbitrators and the umpire. Subsequently one of the

arbitrators erased his name and appended the following memorandum: "Signature erased $\%$ disagreement 5–27–'02." The defendant offered to abide by the award, although admitting its insufficiency; and its offer in that regard being rejected, demanded a new appraisal and named its arbitrator. The plaintiff refused to submit to a new appraisal, and subsequently the action was commenced. In all of the cases cited *supra* it appears that there was a disagreement sufficient to make arbitration necessary under the terms of the policy. In each case the process of the adjustment of the loss had gone to the point where it was incumbent upon the plaintiff to show an appraisal in order to maintain a suit upon the policy.

(1)   The testimony in the cases at bar is clear that proofs of loss were filed with the companies in accordance with the requirements of the policies. That was in the early part of November, 1909. More than sixty days after that these actions were begun and during that time no reply was received by the insured from either of the defendants as appears by the testimony already set forth. In these circumstances we think the defendants waived all other steps on the part of the plaintiff in the process of adjusting the loss, and after the expiration of sixty days from the filing of the proofs of loss by the plaintiff, he was entitled to maintain his suit. This view is abundantly supported by the cases and textbooks.

4 Cooley, Briefs on the Law of Insurance, page 3612, states the law as follows: "Even though it be conceded that the policy requirement as to arbitration or appraisement is valid, and that a compliance therewith constitutes a condition precedent to the right of action, there still remains the question whether the requirements of the policy, under the circumstances of the particular case, have rendered the arbitration or appraisal itself a condition precedent to such right. Under the ordinary policy provisions, the first phase of this question depends on whether there has been a disagreement between the parties as to the amount of the

loss, and on the necessity and sufficiency of the demand for arbitration. As already noted, the requirement for arbitration is usually made dependent upon the failure of the parties to agree as to the amount of the loss. Full effect has been given this provision, and under it arbitration or appraisal has been held not a condition precedent to a right of action unless there has been in fact such a disagreement."

In *Randall* v. *The American Fire Ins. Co.*, 10 Mont. 340, 361, after an extended review of the cases, the court said: "Without further reviewing authorities, we conclude from the number examined bearing upon this important subject that the tendency now is to construe the provision found in contracts like the one before us, providing for arbitration as to differences respecting the amount of loss or damage, to mean, in contemplation of the parties, that the party desiring arbitration shall request the same. In view of the numerous terms and conditions of the contract, and the position occupied by the parties, we believe this is the manifest intention. Under the terms of the policy, when a loss occurs the time for payment is fixed. Notice and verified proofs of loss are required to be presented by the assured, with other conditions as to proofs and examinations, if the insurer request them. The proofs of loss certify under oath the amount of loss as claimed by the assured. The insurer may accept this estimate, or proceed to negotiate for an adjustment or a 'mutual agreement' with the assured, as to the amount he will take in satisfaction of the contract, or the insurer may give notice within the required time of intention to restore the property. All these alternatives for the insurer are provided in the policy, and it is contemplated that the assured must await the movements of the insurer upon some of these lines of action. The assured cannot know which will be adopted until notified by the insurer. The insurer may, also, if a difference of opinion as to the fair amount of the loss is entertained, notify the assured thereof, and request arbitration. The insurer has the amount of loss claimed by assured stated under oath,

and the suggestion of 'differences' in that respect must come from the insurer, and such differences ought to be certain, and would probably involve the admission of liability to pay a stated amount (*Lasher* v. *Northwestern Nat. Ins. Co.*, 55 How. Pr. 318), so that an issue would be stated to submit to arbitration.   The insurer, under such a contract, is the only party who can effectually demand and bring about arbitration, or gain a defence by reason of the other party's default in failing to comply therewith.   But if the assured fails to request arbitration, this deprives the insurer of no right whatever.   It the insurer is deprived of the right of arbitration, it happens by his own laches. Nor by demanding arbitration can the assured bring that remedy into action, for the insurer may simply ignore such demand, and lose no defence thereby when the cause of action is taken into court.   Therefore, under the peculiar conditions of the contract, it depends on the will of the insurer alone as to whether he will have arbitration or not. If he demands it in season according to the conditions of the policy, and the conditions are shown to exist which the policy provides shall be submitted to arbitration, then the assured must accede to the request, for the courts will afford him no remedy until he submits to arbitration."   .  .  .   "But, on the other hand, if the insurer is unwilling to arbitrate, he may ignore the request made by assured therefor; and under such conditions, to require the assured to make the request and plead and prove the fact is to require a vain and useless act, and the ceremony of proving it, which is always against the policy of the law."

In *J. M. Winchester, Respondent* v. *North British Ins. Co. of London and Edinburgh, Appt.*, 116 Pac. 63; 35 L. R. A. (N. S.) 404, the same doctrine is laid down and the language from the Montana case set out above cited with approval.   In this California case the plaintiff prepared proofs of loss in due form which were filed with the company.   Subsequently, the defendant made a demand that an appraiser should be appointed, but this did not reach

the plaintiff's attorney until after the expiration of sixty days. The provisions of the policy with regard to the matters now under consideration are identical with those in the Rhode Island standard form. The court held that the trial court was right in holding that failure to serve notice upon the insured of any demand for appraisal within sixty days after service of proof of loss amounted to a waiver.

The court points out that in *Old Saucelito, &c. Co. v. Com. Union Ins. Co.*, 66 Cal. 253, cited by the defendant, the question, as now presented, was not squarely raised and, moreover, that there seems to have been a request for arbitration by the defendant. The opinion also clearly approves *Case v. Manufacturers F. & M. Ins. Co.*, 82 Cal. 263, where the court said: "It is sufficient to say that a demand made for the first time after the expiration of the full period of sixty days, or, in other words, after the loss had become payable and a right of action had accrued, would have been too late." The court also holds that the earlier California cases, including *Saucelito, &c. Co. v. Ins. Co.*, 66 Cal. 253, and *Adams v. South British Nat. F. &. M. Ins. Co.*, 70 Cal. 198, cited by the defendants in their brief are overruled by *Case v. Manufacturers F. & M. Ins. Co.*, saying: "But, even if it be conceded that the opinions in the cases just discussed tend to sustain appellant's position, then we must hold that those cases are to that extent overruled by the later opinion of this court in bank in *Case v. Manufacturers F. & M. Ins. Co., supra.*"

The California Court, also in *Farnum v. Phœnix Ins. Co.*, 83 Cal. 246, used this language: "No arbitration is contemplated or required by the terms of the policy, except in case of failure of the parties to agree upon the amount of the loss. After the fire, and within the time prescribed by the policy, the plaintiff furnished the defendant the requisite proofs of loss to the extent of one thousand dollars,—the amount alleged in the complaint,—and thereupon, without questioning or making any objection to the amount of the loss claimed, or to the proofs thereof, the company for other

reasons, not only denied its liability, but denied the exist-
ence of the policy, claiming that it had been cancelled two
months before loss.   This was sufficient evidence that the
defendant acquiesced in the amount of the loss claimed, and
thereby waived its right to have it determined by arbitra-
tion."   See, also, *American Fire Ins. Co.* v. *Stuart* (Texas),
38 S. W. 395;   *Manchester F. Assurance Co.* v. *Koerner,* 13
Ind. App. 372;   *Vangindertaelen* v. *Phenix Ins . Co.,* 82 Wis.
112;   *Norris* v. *Eq. Fire Association,* 19 S. D. 114.

Defendants' counsel in their brief say:   "While it is.
probably true that if properly pleaded and supported by
testimony an unreasonable neglect on the part of the com-
pany to endeavor to agree with the insured as to the amount
of loss would excuse the non-compliance with the condition
with reference to ascertainment, it must be equally· true
that· testimony to be effective must be in support of some.
material allegation in the ·declaration.   In the absence of
any allegation in the declaration that the defendants.
neglected for an unreasonable time to endeavor to agree
with the plaintiff as to the amount of loss and damage, the
testimony upon that point, particularly the testimony that
the companies did not communicate with the plaintiff
after receiving proof of loss, must be deemed to have been
directed merely to the allegation of due presentation of
proof of loss and for the purpose of showing that the com-
panies made no objection to the form in which the proofs.
were submitted;" and cite *Garrett* v. *Louisville & Nashville
R. R. Co.,* 235 U. S. 308.

The allegation of the declaration is that the plaintiff
(2) "has done, fulfilled and performed all things on his part to be
done, fulfilled and ·performed in order to entitle him to
recover said loss under said policies."

The plaintiff having filed the proofs of loss, it was incum-
bent upon the defendants, if they did not intend to regard
this amount as the loss, to have taken the next step in the
process of adjustment.   They should have demanded further

proofs, or an examination of the insured or an examination of his books, or the certificate of a magistrate, or they should have notified the insured of their intention to take the property at the appraised value. The insured could not know what the companies intended to do. He has made his claim and the failure of the insurance companies to object to that claim amounts to an acceptance of it. If this rule be the true one, all that was needed to be done by the plaintiff was to furnish proofs of loss, and his pleading that he has done all the things by him required to be done will not involve any allegations other than that he has furnished proofs of loss.

(3)    The requirements as to pleading in a fire insurance case were considered by this court in *Whipple* v. *The United Fire Insurance Co.*, 20 R. I. 260. The court there held that it is sufficient if enough is set forth to show a right to recover. It appeared that in that case as in the case at bar, "'the declaration avers that the plaintiffs have in all things kept, fulfilled and performed all conditions and things on their part to be kept, fulfilled and performed, to entitle them to recover on the contract."

The case cited by the defendants' counsel in their brief from the U. S. Supreme Court is not in point. That case simply decides that in case of death by wrongful act a declaration by those entitled to recover under the statute must allege that the plaintiffs are entitled to recover because they belong to one of the classes authorized by the statute to recover. Moreover, in that case, the plaintiff had thrice been offered an opportunity to amend, which he had failed to take advantage of. The case has no relevancy to the conditions in the case at bar.

It follows from the above considerations that the pleading in the case at bar is sufficient. Plaintiff did not rely upon a waiver by the company of any step which it was incumbent on him, the plaintiff, to take.

The defendants' counsel seem to argue that plaintiff did not prove that the defendants denied liability under the policies and their argument appears to be that since this

was not proved, the case was not proved, and so there must be a judgment for the defendants.   In other words, defendants' counsel seem to claim that this allegation of denial of liability is the only allegation, proof of which, will entitle the plaintiff to recover.

The claim of the plaintiff in that regard is (1) that denial of liability is proved; and (2) that if not proved, the allegation in that regard is surplusage, and so may be rejected. The trial judge refused to charge the jury that under the evidence there was no denial of liability.   His position must have been that the jury were entitled to infer denial of liability from the conduct of the defendants in the matter, that is, from their neglect from the time of the fire down to the time of the trial to take any notice whatever of the loss, to assist in any way in adjusting it, to make any reply to the letters of their own agent with regard to it or to make any reply to or take any notice of the sworn proofs of loss filed. But even if this is not so, the plaintiffs claim that this allegation is surplusage and may be rejected and there would be still left in the declaration sufficient allegations to support the verdict and sufficient proof to support the allegations. We think this is true.

It is well settled that surplusage may be disregarded. The definition and rule is stated in 31 Cyc. 68, as follows: "Surplusage is matter which is unnecessary either to the substance or form of the pleading, and which if stricken out would leave a good pleading, or, as otherwise stated, which consists in the allegation of matter so wholly foreign and irrelevant that no allegation whatever upon the subject is necessary.   Matter of this nature is deemed not to vitiate a pleading, and will be ordinarily disregarded, and while it may be properly stricken out on motion, it does not render a pleading subject to demurrer, either general or special."

The second question raised by the defendants is: "Whether or not the plaintiff by reason of the evidence that the property insured was at the time of the issuing of the policy and of the fire, in a location different from that

averred in the declaration and set forth in the policies, is entitled to recover."

The defendants contend that the property insured was described in the policy as situated at seventy-eight and one-half Pierce Street, and that the property damaged was in a store situated at number seventy-eight Pierce Street and, therefore, that the plaintiff has not proved that the property insured was the property damaged.

The language of the policy with regard to location is as follows: "All while contained in the two-story framed building occupied for store and dwelling, situated No. 78½ Pierce Street, Westerly, R. I." The same language is used in both policies.

The testimony of the plaintiff was as follows: "Q. Were you in business in Westerly? A. Yes, sir. Q. What kind of business? · A. Grocery. Q. Where do you carry on your business? A. 78 Pierce Street." The plaintiff further described the place as follows: "Q. Please tell us what kind of a building your store was in? A. It is a wooden structure. Q. And how large? A. I don't know, the man that owns the building knows. Q. Was it one story, two stories, or three stories? A. It was the store and two floors above the store. Q. Where was the store located, on the first floor off the street, or on the second floor? A. The store was on the bottom floor. Q. And were there two stories above the store? A. Yes, sir." Cartranze Nigrelli testified: "Q. Where did you live in October, 1909, Mr. Nigrelli? A. 78 Pierce Street. Q. And on which floor of the house did you live? A. · Above the store. Q. Above the store, who occupied the store? A. Thomas DePaoli. Q. The man who has been on the witness stand? A. Yes, sir."

The plaintiff also testified that before the agent, Mr. Chester, made out the policies he called at the store and looked over the stock carefully and went away, and that he afterwards brought the policies.

The description, which was filled out by the insurance companies' agent, according to the testimony, contains two things by which the building can be identified; one, that it was a two-story frame building occupied by store and dwelling, situate on Pierce Street, and the other, that the number was 78½ Pierce Street. There is nothing in the testimony anywhere to indicate that there were two buildings, one numbered 78 and another numbered 78½. The policy described a building situate at No. ·78½. It does not say that the store is numbered 78½, but that it is in a building, which building is situated at No. 78½. The plaintiff described the building in which the fire occurred as being a building containing a store and dwelling apartments over it, and says that he did business at 78 Pierce Street. The tenant says he lives at 78 Pierce Street. It is a matter of common knowledge, of course, that the same building may have doors with different numbers. The description of the building in the policy and the description of the building in the testimony, together with the fact that the policies were brought to the plaintiff by the insurance agent after he had first visited the premises, and the description contained in the policy was put in by him, are sufficient to submit the question to the jury as to whether or not the property injured was the property insured.

(6) The rule is stated as follows in 2 Cooley on Insurance, p. 1278: "It may be stated as a general rule that if property is otherwise sufficiently identified, a misdescription as to location will not avoid the policy." This rule is illustrated by the following cases.

In *Breckinridge* v. *American Central Ins. Co.*, 87 Mo. 62, the description in the policy was, "on his two-story shingle roof frame building, occupied by tenant as a dwelling situated on the east side of Elm Street, Jefferson City, Cole County, Mo., reference had to application and survey number 2081, on file, which is his warranty, and a part hereof." A deed of land to the plaintiff was put in evidence. The court said: "It is impossible for this court, from an

inspection of the description contained in the deed and that in the policy, to determine whether there is any material variance between the two descriptions. Counsel inform us that Elm Street runs from the eastern to the western limits of Jefferson City, and that Chestnut Street runs from the northern to the southern limits of the city, and hence it is an utter impossibility for the house to be located on the *east side* of Elm Street. There was no evidence on this point, and we certainly cannot take judicial notice of the streets of this city, nor of their directions, etc." The court ruled that the evidence reasonably tending to establish that the house insured was on the land conveyed was sufficient.

In *American Central Insurance Co.* v. *McLanathan*, 11 Kan. 533, the policy contained the name Vine Street where it should be Elm Street. The court said: "In such a case the contract is not void for uncertainty, nor is there any need of applying for a reformation of the contract, provided it appear either from the fact of the instrument or extrinsic facts which is the true and which the false description."

In *Yonkers & N. Y. Fire Ins. Co.* v. *Hoffman Ins. Co.*, 6 Rob. 316, the word Arch Street was used instead of Ash Street in a description. The description was as follows: "contained in McHenry's yard, situate on the south side of Dickerson Street, east of Front Street, between Mead and Ash Streets, Philadelphia." The court said: "An inaccurate description will not necessarily defeat an instrument and it may be corrected by construction, if there is enough besides to identify the place, and thus supply the means of making the correction; or where the instrument as a whole, shows with certainty, that it was an error, and also shows with equal certainty how the error may and should be corrected."

In Wisconsin, in the case of *Prieger et al.* v. *The Exchange Mutual Ins. Co.*, 6 Wis. 89, the description was, "Prieger's Paper Mill, situate N. E. qr. of Sec. 26, Town 7, Range 21." It is claimed that the evidence showed that the mill was

"on the S. W. qr. of Sec. 25." The court said: "It is supposed that the court will take judicial notice of the relative situations of the sections and quarter sections of land according to government survey; and that the S. W. qr. of Sec. 25 corners with the N. E. qr. of Sec. 26, and that if the water to propel the mill was actually upon the corner of the S. W. qr. of Sec. 25, it could not in any degree be *material to the risk.* Besides, the testimony of Kluppack shows that if there was an error or mistake herein, it was the fault of the agent of the company, and not the plaintiff. But it is entirely immaterial."

In *State Ins. Co.* v. *Schreck,* 27 Neb. 527, the court said: "The next and last contention of the plaintiff in error is, that there is a material and fatal variance between the description of the premises as described in petition and the proof. In the policy the property is described as all being situated upon the northeast quarter of Section 2, township 30, range 16, and it is so described in the petition. It is shown in the proof that the correct description of the property would have been the northwest quarter of Section 2, and of the same township and range. This seems to have been a mistake on the part of the agent or of the assured, or perhaps of both, at the time of the execution of the policy.

" It is contended by plaintiff in error that before defendant could recover he should have instituted his action in equity to reform the policy, and that having failed to do so, he cannot recover. To this we cannot agree. It was shown upon the trial that at the time of the execution of the policy the agent went to the house of the defendant in error, examined all the property and effected the insurance; that during the time intervening between the execution of the policy and the trial defendant in error had continually resided upon the premises upon which he then resided, and where the insurance was effected, and that the personal property had been there during the whole of that time." The court held that the variance was not material and that it was not necessary that the policy be reformed before the trial.

(7)    Under the authorities, the property was sufficiently identified and no reformation in equity would be necessary.

Of the cases cited by the defendants in this branch of the case, *Wilson* v. *Ins. Co.*, 156 Mich. 545, is not a case of misdescription at all, but is a case where the question was whether the contents of certain barn buildings were included in the policy. It was admitted that the articles injured were contained in a building not insured. It was further held that the question should go to the jury as to whether or not the insurance company had such knowledge of it that it might be decided that the property destroyed was covered. There was a verdict for the plaintiff.

The case from Minnesota was a clear case of misdescription; the number 31 was used when 32 should have been used in describing a section of land, and in this case the court held that there could be no recovery unless the policy were reformed.

In *Eggleston* v. *Ins. Co.*, 65 Iowa, 308, 311, where the property was described as "lots 7 and 8, block 2, in the town of Floris, Davis County, Iowa," it was shown that the building was on "lots 7 and 8 of Hoisington's Addition to the town of Floris." The court held that there was a latent ambiguity and that it might be explained by parol in an ordinary action.

The case of *Citizens Fire Ins. Co.* v. *Lajoie*, 4 Montreal L. R. (Q. B.) 362, was not a case of misdescription, but a question whether property in an adjoining building into which the insured had extended his premises was covered.

In the Massachusetts case, *Westfield Cigar Co.* v. *Ins. Co.*, 165 Mass. 541, it was held that an insurance policy covering goods contained in "brick block situated numbers 80–92 W. Street" covered also the property in the fifth floor of the same block over a store numbered 80.

In *Le Gendre* v. *Ins. Co.*, 95 App. Div. (N. Y.) 562, cited by defendant, the policy described the house as on the southerly side of a road whereas it was on the northerly side. Since it was a case both for reformation and for recovery,

the court decided that the contract might be reformed and the plaintiff recover, but the case does not decide that no recovery could be had without reformation.   As to that the court said:  "It is unnecessary to decide whether the plaintiff could have recovered without reformation and, therefore, we express no opinion on that question."

*Curnen* v. *Ins. Co.,* 159 App. Div. (N. Y.) 493, cited by the defendant allowed a recovery and does not discuss the matter of reformation, although it does cite the case in 95 App. Div. 562, *supra.*

All the defendants' exceptions are overruled and the cases are remitted to the Superior Court for Washington County with direction that judgment be entered in each case for the plaintiff upon the verdict.

*John J. Dunn, Waterman & Greenlaw,* for plaintiff.
*Charles E. Tilley,* of counsel.
*C. M. Van Slyck, Frederick A. Jones,* for defendant.