252 A.2d 176 (1969)
Stanley A. BROWN, Jr., Admr.
v.
CHURCH OF the HOLY NAME OF JESUS et al.
No. 401-Appeal.
Supreme Court of Rhode Island.
April 7, 1969.
*177 Gerald A. Oster, Irving N. Espo, Thomas F. Fay, for plaintiff.
Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, George M. Vetter, Jr., James E. Keeley, for defendants.
POWERS, J.
This civil action was brought by Stanley A. Brown, Jr. as administrator of the estate of Russell J. Brown, his son, who died in a drowning accident on August 11, 1965, while participating in an outing conducted under the auspices of the defendant church. All of the parties are Rhode Island residents, but the death occurred in the commonwealth of Massachusetts.
The plaintiff commenced his action by a complaint filed August 5, 1967, containing four counts, which allege the circumstances of the outing, injury and death. Paragraph 2 of plaintiff's first count specifically pleads the Massachusetts wrongful death act.[1] This paragraph is included by *178 reference in plaintiff's three additional counts. The defendants, in lieu of answering, filed on October 27, 1967, a motion to dismiss for failure to state a claim under rule 12 (b) (6) of the superior court rules of civil procedure, and on the additional ground that the claim was barred by the Massachusetts statute of limitations.[2] As to this latter contention, we note parenthetically, that by reason of defendants' status as non-residents of Massachusetts, the one year statute of limitations is without materiality here. See Mass. Ann. Laws, ch. 260, § 9.
A hearing on the motion was held January 18, 1968, before a justice of the superior court, and defendants' motion to dismiss for failure to state a claim was granted with prejudice.
The superior court justice based his ruling on our holding in McGrath v. Tobin, 81 R.I. 415, 103 A.2d 795, that the Massachusetts wrongful death act was penal in nature and therefore unenforceable in the courts of this state. The plaintiff seasonably appealed. He has argued that we should either: 1) overrule our holding in the McGrath case and apply the Massachusetts statute in full; 2) apply so much of the Massachusetts statute as is not penal and apply the Rhode Island rule of damages for wrongful death actions; or 3) apply Rhode Island law in full.
Subsequent to the decision by the superior court justice in the present case, we decided in Woodward v. Stewart, 104 R.I. 290, 243 A.2d 917, that this court would not necessarily follow the lex loci delicti rule in tort conflicts cases, where, as to some particular issue, another state has a more significant interest. Further, we employed five guidelines for weighing the conflicting interests in each case. Id. at 300, 243 A.2d at 923. These guidelines are:
(1) Predictability of results.
(2) Maintenance of interstate and international order.
(3) Simplification of the judicial task.
(4) Advancement of the forum's governmental interests.
(5) Application of the better rule of law.
Applying these guidelines in Woodward, we decided that the Rhode Island wrongful death act, rather than that of Massachusetts, was applicable in an action between Rhode Island residents where the only connection with Massachusetts was the single fact that the injury resulting in death occurred in that state.
Turning to a consideration of the instant complaint, we are bound to treat the allegations therein in the light most favorable to plaintiff. Bragg v. Warwick Shoppers World, Inc., 102 R.I. 8, 227 A.2d 582. Further, since all parties are residents of this state and the excursion began here and presumably was to end here, it is reasonable to infer for the purpose of ruling on the instant appeal, that the relation between plaintiff's defendant and defendants was centered in this state. Hence, our holding in Woodward as applied to these facts dictates the application of the Rhode Island wrongful death act in this case.
It is essential to note that although all four counts of the complaint are based on the Massachusetts wrongful death act, the complaint is otherwise sufficient to state a cause of action under Rhode Island law. The inclusion of the Massachusetts statute may be disregarded as surplusage.[3] Even before the adoption of the *179 present liberal superior court rules of civil procedure, this court held that any matter pleaded which, if stricken, would leave a good pleading before the court, such matter may be disregarded. Ciunci v. Troiano, 99 R.I. 45, 48, 205 A.2d 574, 576; DePaola v. National Insurance Co., 38 R.I. 126, 139, 94 Atl. 700, 704.
The defendants argue, however, that the present facts are distinguishable from Woodward, as well as from numerous other cases applying the "interest weighing" or "significant contacts" test in tort conflicts cases, since the place of the accident was not "purely fortuitous."
Acknowledging the distinction between the fortuitous aspect of the accident in Woodward where the parties were in transit and its absence in the case at bar, where the alleged tortious conduct occurred at the only place where it could have occurred, the instant defendants take nothing thereby. This is so because what we held in Woodward was that the place of the accident is but one of the significant factors to be considered in the weighing of the multiple factor concept.
As set out in Restatement (Second) of Conflicts § 145(2) (Proposed Official Draft 1968) the factors to be taken into account are:
"(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered."
Manifestly, in Woodward, as here, the factors designated (a) and (b) constitute a single contact. Moreover, as we held in Woodward, where contacts (a) and (b) are the only ones pointing to the law of another state, and contacts (c) and (d) point so strongly to the application of our law, the law of this state will be applied in resolving the issues in conflict if called for by the application of the Woodward guidelines.
It is further argued, on behalf of defendant church that there is an additional bar to recovery by plaintiff, namely, the Massachusetts public policy which immunizes all Massachusetts charitable and religious institutions from negligence suits. Since the present action arose out of alleged negligence by the agents of defendant church in Massachusetts, the church invokes the protection of the Massachusetts immunity. This contention looks for support to the holdings in Hinman v. Berkman, 85 F. Supp. 2 (W.D.Mo.); Jeffrey v. Whitworth College, 128 F. Supp. 219 (E.D.Wash.); and Kaufman v. American Youth Hostels, Inc., 6 App. Div. 2d 223, 117 N.Y.S.2d 587, modified 5 N.Y.2d 1016, 158 N.E.2d 128. It must be noted, however, that all of these cases were decided under the lex loci delicti rule in tort conflicts cases and therefore do not represent valid precedents in the present case. No case has been brought to our attention nor have we found any in which the charitable immunity question has been considered in light of the new tort conflicts tests.[4]
This charitable immunity conflict arises from the long-standing Massachusetts public policy of not allowing any recovery against charitable institutions for injuries caused by the acts of the charity or its agents. McDonald v. Massachusetts General Hospital, 120 Mass. 432; Glaser v. Congregation Kehillath Israel, 263 Mass. 435, 161 N.E. 619; Simpson v. The Truesdale Hospital, Inc., 338 Mass. 787, 154 N.E.2d 357.
Rhode Island has long rejected the charitable immunity doctrine. Glavin v. *180 Rhode Island Hospital, 12 R.I. 411.[5] There, this court stated at 428:
"* * * the question here is, whether a charitable corporation, like the Rhode Island Hospital which holds its property for the charity, is more highly privileged than a corporation created for public purposes, which holds its property for such purposes; whether, in fact, because it holds its property for the charity, it is relieved from all responsibility for the torts or negligence of its officers, trustees, agents, or servants. We have come to the conclusion, after much consideration, that it is not."
As the court, in Glavin, observed, the English rule, on which the Massachusetts rule is based, had been repudiated in England prior to its adoption in Massachusetts.[6]
To determine whether to apply the Massachusetts or the Rhode Island rule we will analyze the question in accordance with the guidelines set forth in Woodward. We are aided in this analysis by the well-reasoned application of the same guidelines by Chief Justice Kenison in Clark v. Clark, 107 N.H. 351, 222 A.2d 205.[7]
First, then, predictability of results is not of great importance in the present case. The defendant church knowing that Rhode Island law does not afford it immunity for the negligent acts of its agents would foresee its legal liabilities in accident cases in light of that law. See DeMello v. St. Thomas Church, 91 R.I. 476, 165 A.2d 500.
Secondly, the maintenance of interstate order is without great significance in the present case. Massachusetts law and policy would not be offended if Rhode Island law were applied to regulate the relation between a Rhode Island resident and a Rhode Island charitable corporation where the application of that law would not place any hinderance or burden on the party's incentive to use the facilities which Massachusetts wishes to provide them. True, the present action could not be maintained in a Massachusetts forum because of the charitable immunity rule, but that rule has never been justified as a conduct regulating rule. It does not purport to establish a duty of care.[8] Rather, it merely excuses Massachusetts charitable institutions from their negligent acts and the negligent acts of their agents because of the nature of those institutions. Rhode Island has not seen fit to excuse these acts. Glavin v. Rhode Island Hospital, supra; Basabo v. Salvation Army, Inc., 35 R.I. 22, 85 Atl. 120.
Simplification of the judicial task might point to the application of the Massachusetts immunity rule since it would result in the court's not having to try the case at all, but the primary purposes of Rhode Island courts is to settle disputes among her residents. Negligence actions add substantially to the judicial burden, *181 but this fact is without significance when weighed against the long established right of parties to litigate such claims.
The advancement of the forum's governmental interest is of significant weight in this case. Rhode Island has a natural interest in regulating the relationships among its domiciliaries. The instant relationship was apparently created in Rhode Island; the plaintiff and all defendants are residents of Rhode Island. Hence, only Rhode Island is concerned with the ultimate result. In Restatement, supra, § 168b, it is stated:
"* * * If the plaintiff is domiciled in the state where the defendant corporation has its principal place of business, it would seem that, usually at least, this state would have the greatest interest in the issue of charitable immunity and that its local law should be applied."
Finally, we feel our policy to be the better rule. Although in most conflict circumstances it is difficult to say which is truly the better rule as between two conflicting policies, in the present situation, even the Massachusetts Supreme Judicial Court has recognized the disfavor in which the charitable immunity doctrine is held. As it stated in Simpson v. Truesdale Hospital Inc., supra, at 787-788. 154 N.E.2d 358:
"Our attention has been directed to many recent decisions in other jurisdictions in which the doctrine of charitable immunity has been criticized and repudiated. See note in 25 A.L.R. 2d 29, 142 et. seq. It has also been disapproved by distinguished text writers. See, for example, Prosser on Torts (2d ed.) 784-788; Harper and James, Torts, § 29.16. While as an original proposition the doctrine might not commend itself to us today, it has been firmly imbedded in our law for over three quarters of a century and we think that its `termination should be at legislative, rather than at judicial, hands.' Comeau v. Harrington, 333 Mass. 768. See Knecht v. Saint Mary's Hosp. 392 Pa. 75, 140 A.2d 30."
It is significant to note that the Knecht decision relied upon in Simpson has since been overruled. Flagiello v. Pennsylvania Hospital, 417 Pa. 486. 208 A.2d 193; Nolan v. Tifereth Israel Synagogue of Mount Carmel, Pa., Inc., 425 Pa. 106, 227 A.2d 675. As pointed out by Brody, supra, numerous jurisdictions have recently judicially overruled the charitable immunity doctrine, one of them, Washington, after having refused to do so on five previous occasions. 41 B.U.L. Rev. at 202. The Rhode Island policy has clearly been recognized as representative of the better rule.[9]
This analysis, then, of the charitable immunity issue in accordance with the Woodward guidelines leads us to conclude that the Massachusetts charitable immunity doctrine is wholly inapplicable in the present case.
That commonwealth, however, does have the more significant interest in whether defendants' alleged tortious conduct constitutes negligence within its borders. At trial, then, the test to be applied will be that which constitutes ordinary negligence in Massachusetts.[10]
*182 It should again be noted that since this case is before us on appeal from the granting of the defendants' motion to dismiss for failure to state a claim, we have necessarily viewed all the allegations in the light most favorable to the plaintiff. This view, of course, does not excuse the plaintiff from proving during the future course of this case all of the allegations which we have assumed to be true, as well as the allegations of negligence in the complaint in a trial of the case on its merits.
The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the superior court for further proceedings in accordance with this opinion.
NOTES
[1] Mass. Ann. Laws, ch. 229, § 2 (1968 Supp.)
[2] Although the Massachusetts wrongful death act presently contains a two year statute of limitations, this period was established by amendment to the Massachusetts statute which became effective in 1968. The applicable statute of limitations under the Massachusetts act at the time of the death and the commencement of the instant action was one year.
[3] The reason for the inclusion of the Massachusetts statute by plaintiff is obvious since under our choice of law rule in effect at the time of the drawing of the complaint, plaintiff would have had a cause of action only under Massachusetts law. Our subsequent holding in Woodward, of course, drastically affected plaintiff's position.
[4] See Cavers. The Choice-of-Law Process, pp. 19-32, for a hypothetical presentation of the views which several conflicts authorities would take of the question before us in the present case.
[5] After the rejection by the Rhode Island Supreme Court of the charitable immunity doctrine in Glavin, the general assembly enacted an immunity law which applied only to charitable hospitals. G.L. 1896, chap. 177, sec. 38, later G.L. 1956, § 7-1-22. Even this limited immunity, however, has recently, been repealed by P.L. 1968, chap. 43 and such hospitals are now liable for the negligence of their agents and employees in the same manner as an ordinary corporation.
[6] For a critical discussion of the development and justification of the Massachusetts rule see Brody, Modifying Charitable Immunity, 41 B.U.L. Rev. 199 (1961).
[7] Chief Justice Kenison's application of the five guidelines in the Clark case are favorably commented on in Leflar, True "False Conflicts," Et Alia. 48 B.U.L. Rev. 164, (1968). Dean Leflar, it should be noted, was the first to enunciate the guidelines in Leflar. Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L. Rev. 267 (1966).
[8] Farrigan v. Pevear, 193 Mass. 147, 78 N.E. 855: Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66. 126 N.E. 392, 14 A.L.R. 563.
[9] See, for example, Restatement (Second) of Trusts § 402, (1959) comment d.; Bogert, Trusts and Trustees § 401 (2d ed. 1964); IV Scott. Trusts § 402; President and Directors of Georgetown College v. Hughes, 130 F.2d 810 (D.C. Cir.); Bing v. Thunig, 2 N.Y.2d 656, 143 N.E.2d 3; Flagiello v. Pennsylvania Hospital, supra; Michael v. Hahneman Medical College & Hospital, 404 Pa. 424, 443, 473, 172 A.2d 769, 778-794 (dissenting opinion of Musmanno. J.).
[10] As the New York court of appeals stated in Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279:

"In conclusion, then, there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented."
See also, Clark v. Clark, supra; Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408.