

JOHN JORDAN, Appellant

VS

TOURO INFIRMARY AND

HEBREW BENEVOLENT ASSN.

No.8840

CHARLES F. CLAIBORNE, Judge.

November 13th 1922.

Judge Imklespiel, recused

Court of Appeal,
PARISH OF ORLEANS

Nov 13/22

Stansbury

JOHN JORDAN,Appellant

Vs No.8840

TOURO INFIRMARY AND

HEBREW BENEVOLENT ASSN.

Charles F.Claiborne,Judge.

This is a damage suit for injury suffered by the plain-
tiff at the hands of one of the nurses while he was undergoing
an operation at the defendant Infirmary.

The petition alleges that in August 1920 he entered
the Touro Infirmary for the purpose of undergoing an operation
to be performed upon him by Dr Rudolph Matas,a surgeon of said
Infirmary,employed by him;that he was a pay-patient and had
engaged a room for which he stipulated to pay a fixed price,
and in addition thereto agreed to pay for the use of the oper-
ating room,and for the services of an employee of the infirmary
to administer the anesthetic;that during the operation one of
the nurses employed by the Infirmary in attendance upon him
negligently inflicted upon him painful and permanent injuries
by placing at his feet certain heating appliances which burned
and blistered his feet as as to partially disable him for life,
the whole while he was under the influence of anesthetic and
helpless.For all of which he claims $28,000.00

The defendant first filed an exception of no cause of
action which was overruled.

For answer the defendant admitted that the plaintiff
had entered the infirmary as a pay-patient paying a fixed price
per day for the use of his room and for the use of the operating
room,but denied all the other allegations of the petition.

Further answering defendant averred :

And for further answer defendant avers that it is a
charitable association,organized for charitable purposes under
and as authorized by the laws of this State by act before
Felix J.Dreyfous,Notary Public,on March 6th 1893 as per certified

200

copy of charter annexed hereto;that said defendant is a benevolent or charitable association or corporation,and is not incorporated for profit,nor does it operate any business for profit, but that all its revenues,including the dues of its members and patrons,donations and legacies,contributions by the City of New Orleans,and all receipts from pay-patients,and from all other sources whatever,are devoted exclusively to charitable and benevolent purposes and to the care and treatment of Charity patients and inmates,and that no part of its revenues is paid out to its members or patrons for profit or otherwise;that the funds received from said donors and all other sources,constitute trust funds devoted to charitable purposes,and which cannot be diverted from the uses and purposes to which the same have been dedicated;that defendant used all due diligence and reasonable care in the selection of its employees;and that this deffendant is not liable for the alleged injuries described in plaintiff's petition,even if they were suffered by him,which is denied."

There was judgment for defendant and plaintiff has appealed.

The above answer contains three propositions of legal defence;

First: That the nurse was not the servant of the defendant within the meaning of Article C.C.2320

Second: That even if she was,the defendant was not liable for her negligence,inasmuch as it had exercised due care in the selection of this nurse,and that she was competent to fulfill the duties of her employment;

Third: That there was no negligence on the part of the nurse.

We shall consider the third point in discussing the first and second,inasmuch as under the jurisprudence adopted by us,as we shall see below,the defendant is not liable even if the nurse was negligent in the discharge of her duties.

The defendant has established the character of the infirmary by its charter and by testimony.By Article II " The object of this Association and the purposes for which it has been created are declared to be the giving of relief and protection and the affording of needful surgical and medical aid and comfort to destitute and deserving persons "

Article III of the By Laws provides that " all funds derived from the payment of dues by members and patrons,aswell as by life members.and all donations,bequests or legacies to the association.and all funds derived from any of the privileges heretofore provided for or from any other source,shall, except as hereing otherwise provided,be paid over to the Treasurer of the Association,for such disposition and use as the Board of Managers shall direct."

There is no other provision either in the Charter or in the By-Laws relative to the receipt or disposition of the money of the Association.

Emanuel V.Benjamin testified that he had been President of the Touro Infirmary,the defendant herein for the last twelve years;that it depended for its receipts on the money collected from the pay-patients in the hospital,from contributions, bequests,and money it got from the City,and gifts ;that it had no stockholders,and declared no dividends ; that it paid nothing to its patrons or members or supporters,and that the officers drew no Salary nor any other compensation;the receipts derived from patients are spent for the hospital and upon charity patients,the City of New Orleans contributes $13,000 to their work;that all colors and creeds are received and treated in the hospital,not only from the City but from the surrounding country

The Infirmary was started about the year 1868 by JUdah Touro for the purpose of treating the sick and indigent and was made a part of his will;in 1870 the Infirmary amalgamated with the " Gentlemen's Society " organized to take care of

202

Yellow fever sufferers;it had then a membership of 600 which
it has preserved for the last 35 or 40 years;from the By-Laws
it appears that the annual dues of members are $12 and of patrons *onwards*
$25 and that donors of sums of money varying from $100 *and*
are distinguished by having their names inscribed upon tablets
of honor.Continuing Mr Benjamin testifies that the institution
treats withing the hospital proper,about 7000 patients a year
and in the clinics about 12,000 and in the outdoor clinic about
90,000 all of whom only about two per cent Jewish,the number
of Charity patients is greater than the number of pay-patients /
the doors are open night and day in the clinics and in the free
wards they have a staff of doctors ,Jewish and non-Jewish who
give their services free;the receipts of the institution are
about $300,000 a year from all sources;the deficit between
what the institution receives from pay-patients and from the
City and what it costs to carry on the work of the institution
varies from $25,000 to $40,000 a year;that is made up by contri-
butions and bequests from their friends;the institution has
never owned a dollar in the fifty years of its existence,and has
never been without debt,and this day owes $200,000 and has no
sinking fund nor securities whatsoever;the property of the
institution is exempt from taxation because of its charitable
character;there are ladies connected with the institution who
are called welfare workers who visit the poor sections of the
City and take care of the sick and maternity cases,and the interst
of a certain trust fund of $10,000 the revenues of the pay
department are used to help carry on the Charity department.

Conserning the nurses Mr Benjamin says;They have a
training school with a capicity of about(80) eighty women: a
young woman to become a nurse must first fill out a blank
qualifying as to education and reputation,mental capacity and
health,under the signature of a doctor.clergyman,or reptable
person,in order to be eligible this must be approved not only

by the superintendent of the institution and by its directors, but also by the Louisiana State Board of Examiners for Nurses; the applicant then enters the school as a probational student; for the first six or eight months she does only certain work, such as cleaning up, carrying buckets and vessels;and helping to make up beds,and she takes no part in the medicinal services of the institution:she gradually develops as her training continues,into the first year period,and into the second year period,and in the third year she graduates,if she accomplishes what is expected of her,and receives her diploma;she is paid $10 or $12 a month to meet her ordinary expenses,and she is furnished with meals and lodging and training and teaching; they get hospital and bedside instructions.and attend lectures, demonstrations,and everything that is necessary to qualify them for what their purpose is ;Dr Matas is one of the staff of teachers;among the duties performed by the nurses are waiting on patients and attending on surgeons during operations;she is finally accepted into the school of nurses;she is assigned to duty the same way in the operating room.

Dr John Spelman superintendent of the Infirmary says that there are three classes admitted to the Touro;

1st Pay-patients who pay an amount equal or greater then their cost to the institution.

2nd Part-pay patients who pay an amount inferior to their cost,and

3rd Charity patients who pay nothing;

Mr Jordan paid $4 a day;the entire personnel of the operating room is under the direction of the surgeon operating; no one but him can give orders to any person,neither the President nor the superintendent has any authority there;he repeats the testimony of Mr Benjamin as to the education and qualifications necesary to be a nurse;the course is three years and three months it is only after they have had instruction in bedside nursing

that they pass on to the operating room where they are in charge
of a graduate in nursing;the plaintiff paid $10, for the use
of the operating room,including the service of the nurses;all
patients in the operating room recive the same attentions,
whether they pay or not;the average cost per day of a patient
to the institution is $4.25;the operating expenses for the year
1920 were $326,959.50 and the income derived from hospital ser-
vices rendered was $303,054.14 leaving a loss of $23,905.36
not including payment of interest on money due amounting to
$8,344.91 making a total loss of $32,250.27;this loss was covered
by $13,000 from the City and by private contributions;the aim
of the hospital is to make the pay patients support the entire
institution,Charity and pay as far as possible;frequently patients
contract for services and do not pay for them.

Miss Rose,Directress of Nurses at the Touro for the last
five years,and a graduate of that institution for eight years,
corroborates the testimony of Mr Benjamin and of Mr Spelman;
nurses are never admitted into the operating room during the
first year;sometimes the latter part of the second year,and
generally during the third year;all the nurses admitted in the
operation room in the Jordon case were third year nurses,except
three graduate nurses;there were 14 school nurses and 3 graduate
nurses;the operating rooms are on the third floor;they are four
in number;a hallway separates them from the instrument and
supply rooms,and all nurses go in and out of the operating
room as instruments are and supplies are called for by the
surgeon;the surgeon gives orders to the nurses as to what he
wants and every body in the room obeys him;a through investi-
gation was made to find out how the accident to the plaintiff
happened;in her own language she says;

" We knew that a thing like that could very easily
happen where a patient was or they thought dying.There was so

205.

much being done for the patient,it would be almost impossible
to hold any one person responsible,where there were so many
people doing for somebody that was that ill.In hospitals you
always have some one responsible for what you are doing,but
in a case like that,you cannot hold any one person responsible
where there are so many people doing it xxx but you can't find
out who is responsible for filling may be half a dozen bags,
and going and coming in the room,where there are so many people
busy xx we dont know who filled the hot water bags which
burned Mr Jordan xxx we suppose it was a nurse,it may have been
one of the doctors that was in the room.We dont know.They often
fill hot water bags in the operating room or one of the internes;
he is a graduate registered doctor who goes there for the ex-
perience that the hospital affordsxx he gets no salary;
there were two internes assisting Dr Matas and Dr Landry xxx
in severe cases you have to have hot water bags very very hot.

Dr Matas testifies:

" Yes,as we were approaching the most critical part of the oper-
ation his condition changed and became very grave and we had
to halt the operation so as to restore him,because he was in
such a state of profound shock and for that reason we wanted
to get all restoratives.We wanted to apply hot bags and we called
for them at once.The change was rather unexpected,A sudden
fall in blood pressure.The anesthetist called attention at once
to the fact that his pulse was falling very fast,in fact prac-
tically destroyed entirely at the wrist.So we had to stop
everything,and immediately we applied restoratives and among
them heat.Other things were done.He was infused int the veins
with a solution,and hyperdermis were imposed of digitalis
and strychnine and heat was applied.The call was immediate for
heat in the shape of bags.It looked as though he might die on
the spot unles we did something promptly.We had to halt every-
thing,it was a moment of great concern and great anxiety to

206

every one.I think it was only the fact that he had this prompt attention right on the spot that really carried him through. There was no time to test.We must have hot bags at once,immediately.A peremptory order like this must be obeyed.But we did not have time to find out whether the temperature was so much or so much or whether it would scald or not scald him.The nurses had to obey orders and act.Life was in danger,and we had to disregard every other consideration because every other consideration was a mink consideration."

Q What is the nurses duty in a case of that kind?

A. To obey orders.The order was for hot water bags at once, have it at once.

Whether they applied any of the regulation tests which are recommended in training schools,and nursing schools under these circumstances I do not know.That part I do not know very well.I was not concerned with that.All I know was I said: "Bring hot water bags at once : " There was no time to be testing with thermometers,or anything of that kind.They brought hot water bags,and I suppose they brought them as quickly as they could In my opinion it was unavoidable absolutely."

I ——— Plaintiffs action is based upon the theory that the nurse who applied the hot bags to plaintiff's feet was the defendants servant for whose negligence or tort it is liable He relies upon Article C.C.2320.It reads as follows :

" Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed ".

Where the Supreme Court has spoken upon any question it is our duty to follow them in their reasoning and in their conclusions,In the case of Congdon vs La Sawmill 143 La, 209 (214) the Court adopted the language in Quinn vs RRD.94 Tenn 713 (30 S.W. 1036 ) which said:

"Plaintiff in error insists that the defendant in error

is liable for the mistakes or malpractice of the surgeons in question;that their employment by the railroad created the relation of master and servant and that the ordinary rule which makes the master liable for the negligent acts of his servant within the scope of his employment is to be applied in this case.If he be correct in his contention that the relation between the railroad and these surgeons was that of master and servant,then his conclusion would properly follow. But was that the relationship?We do not think so.The term" "Servant " as it is used in connection with the rule invoked has a well defined meaning.It is applicable,says Mr Thompson in his work on Negligence (Vol 2 P.892 ),to any relation in which with reference to the matter out of which an alleged wrong has sprung,the person sought to be charged had the right to control the action of the person doing the alleged wrong; and this right to control appears to be the conclusive test by which to determine whether the relation exists.For the relation to exist,so as to make the master responsible,he must not only have the power to select the servant,but to direct the mode of executing and to so control him in his acts in the course of his employment as to prevent injury to others"Authorities")

The term " Master " is equally well defined in the law. A"master in the sense of the rule is" one who has the superior choice,control,and direction; whose will is represented not merely in the ultimate result in hand,but in all its details; one who is the responsible head of a given industry;one who has the power to discharge;one who not only prescribed the duty,but directs,and may at any time direct the means and methods of doing the work"14 A and E.E. of law 745 -20 id ( 2 Ed. ) P.12

The definition is the same in Canada.

■■■

34 Ontario Law Reports P.704 Mersey Docke Trustees vs Gibbs;

" The plaintiff a paying patient in the defendants hospital was injured by reason of the carelessness of some one in attendance upon her after an operation.

Held, that the contract was that the defendants should in good faith use due care and skill in selecting the medical staff and in employing and permitting nurses in trianing and other asssitants to work for and attend to patients in the institution, and that was the extent of the defendants duty and responsibility; that the relationship of master and servant did not exist between the defendahts and the physician, surgeons, nurses, and other attendants assisting at the operation, whether these were paid by the defendants or not; that the defendants were not guilty of any negligence in the selection of their staff and nurses and attendants; and therefore, the plaintiff's action to recover damages for the injuries failed".anthorities, also Lavere vs Smith Hospital Ontario 216, Hillger vs Governors 2 K.B. (1909) 820 so. Also in France: in 15 Bandry- Lacantinerie ( Third Edltion ) P,617 S 2912 we read:" But according to jurisprudence another condition is necessary. An individual has the caracter of employee ( prépose ) only when the person who has selected him for certain functions may give him, relatively to them, orders and instructions:"Considering, says the Supreme Court ( D.P.87-1-225) that the responsibility which Article 1384 C.N. imposes upon employers ( commettants ) does not suppose on that, they have selected their employees, but also that the employers have the right to give to the employees orders and instructions concerning the manner of fulfilling the functions in which the latter are employed; that it is this right which is the foundation of the aubhority and subordination without which there is no real employer-authorities.

" Thus the owner of a ship ( armateur ) who have leased to a navigation company the ship with its crew, could not be held

209

civilly responsible for damages caused by the fault of the captain of the ship,if during the time of the lease,the crew and the ship were placed under the authority of the leasing company and that the owner had neither order,nor instructions to give the captain.The latter in fact at the moment he committed the damaging act was not the employee of the owner,another example borrowed from jurisprudence:Physician,and surgeons in hospitals, being designated in the contest *competition* ( concours ) and being submitted,as far as the practice of their art is concerned,neither to the authority nor to the control of the public asssitance, are not the employees of that administration.The latter consequently must be dismissed from Court when it has been sued as civilly responsible for the coursequences of an operation practiced in a hospital.Likewise,physicians which railroad companies employ to treat their servants,wounded or sick,are not the employees of said companies.They can in fact give them neither orders nor instructions in that which concerns the practice of their art.It follows that they incur no responsibility by reason of the consequences of the treatments prescribed by them,treatments of which they have neither the direction nor the control ( surveillance ).According to jurisprudence the condition of which we speak is essential.Thus a master is not responsible for the damages caused by the one who is habitually his employee,when the latter,although still in the exercise of his functions and using the things belonging to his master,acts in the premises,under the orders of the third party".

In line with this opinion is what was said by the Supreme Court in Toca vs Rojas 93 so.108:"Birth gives rise to paternal control and authority over a child,and paternal responsibility for torts is the consequences and offspring of the paternal authority." In other words without authority

210

there is no responsibility.Unless the relations of master and
servant,authority and subordination,exist there is no respon-
sibility,and as this liability of the master for the negligence
of his servant is matter of arbitrary law,it must be strictly
construed,and should not be extended to cases which are not
clearly within the purview of the law.Doubt is fatal to liability .
15 Bandry-Lac.3rd ED.) S 2895 P.594.

As we have seen from the testimony that the nurses are
absolutely under the orders of the surgeons in the operation
room,and in no manner controlled by the officers of the defen-
dant,it has no responsibility for the acts of the nurses.

See also Schoendorf vs N.Y.Hospital 221 N.Y. 125-105
N.E.92-52 L.R.A.N.S.505-- 160 N.W. ( Wisc) 173 -105 N.E.(WY)92.

The case of Stanley vs Schumpert 117 La 255 quoted
by the plaintiff is not in conflict with the above authorities.
In that case there was no evidence that the nurse was competent
or graduated,nor that the defendant did not have the direction
and control of the nurse at the time she inflicted the injury.
This case would be in line with Nations vs Ludington 143 La.209
and 48 L.R.A.N.S. 531-71 W.Va. 708-77 S.E.324-48 L.R.A.N.S.
538-4 L.R.A.N.S. 66/.In the case of Clerc vs R.R.D. 107 La 370
entirely different issues were decided.

The cases relied on by the plaintiff 106 S.E. 355,59
S.E.943,159,Pac 436,135 N.W.800 and 148 N.W.582 may be dif-
ferentiated from the present one,and we prefer to follow the
authorities adopted by our own court.

II ---- In the case of Nations vs Ludington 133 La 657 (664)
the Court said:" The Supreme Court of Missouri,in the case of
Philips ve St.Louis RRD.Co.111 S.W.109 has held that the Company
in such a case must go beyond employing a competent physician;
that it must go further and competently treat the patient."
And the weight of authority seems to be that:

"Where an employer derives no benefit from the retention

of the Hospital **f**und from its employees,it is liable only for
failure to exercise ordinary care to select,employ and retain
a competent physician.Approved in Congdon vs La.Sawmill 143La.212
also 153 S.W.595,Ann Cas 1916 B.471-27 L.R.A.840.

In the case of Congdon vs La.Sawmill 143 La ,209 the
syllabus reads :

"Where an employer engages a physician or surgeon of
ordinary skill and ability to attend to his employees,and pays
the physician from a fund collected from the employees,and
from which fund the employer derives no profit,he is not res-
ponsible in damages to an employee for mistakes of or malprac-
tice by such physician;particularly where it is not charged
and proved that the employer was negligent in the selection
of the physician."

A petition for damages.in such case should contain
allegations of neglect on the part of the employer in employing
a competent physician,and that he derived some profit from the
fund contributed by the employees to pay the physician.
in the absence of such allegations,the petition discloses no
cause of action",quoting a long list of authorities.

~~Not Liable without profit.~~

" A master who employs a physician to treat his employees
and collects small monthly fees from the wages,all of which
he turns over to the physician as his compensation,is not liable
for the physicians malpractice,unless he is negligent in
selecting or retaining him.48 L.R.A.N.S. 536 (538) W.Va.79
S.E.941-124 Pac 505 -143 La 210 -27 L**R**.A. 840 (842) -4 L.R.A.
N.S.66-63 N.W.872.

~~Syllabus~~.

"Those who furnish hospital accommodations and medical
attendance not for the purpose of making profit thereby,but
out of Charity,or in the course of the administration of a
charitable enterprise,are not liable for.the malpractice of the

physician or the negligence of the attendants they employ,but are responsible only for their own want of ordinary care in selecting them" 4 L.R.A.N.S.68

"The test which determines whether such an enterprise is charitable or otherwise is its purpose.If its purpose is to make profit,it is not a charitable enterprise.If it is to heal the sick and to relieve the suffering,without hope or purpose of getting gain from its operation, it is charitable." 4 L.R.A.N. S.68

The answer to the argument advanced by plaintiff that the hospital fees received by the Touro from pay-patients produce a profit and thereby destroy the character of the Touro as a charitable institution,at least,in so far as pay patients are concerned,is found in Pearson vs RRD.153 S.W.595-The Court said:

"The fact that there is a surplus on hand,which could be put out at interest,does not constitute such benefit as would change the character of the defendants belation to its employees in the operation of the hospital.In accumulating the fund and also in caring for the surplus,the RRD.Co.is marely acting as trustee for its employees,and it ism its duty to keep the fund unles it becomes advisable to invest the surplus in saome way"See also 2 Cooley on Forts P.1011-1013-33 Atl. Conn) 595 -78 Atl. ( Me ) 898-15 All (Pa ) 558-236 S.W. (KY)577 173 Pac.1008-120 Mass 432-60 N.W.(Mich ) 42 - 90 N.W. ( Mich ) 278-137 N.W. (Neb) 1120-119 N.Y.# 1034-99 S.W. ( Mo.) 453-96 N.E. ( Ohio ) 1989 -75 Atl.(Pa.)1087-160 Pac % WYO ) 385-169 Pac. (Wash ) 828-109 Fed.294 Writ refused.183 U.S.695.

In opposition to these cases the plaintiff quotes the cases in 159 Pac (Cal)436-12 R.I. 411 -176 Pac(Cal ) 46-175 N.W. ( Minn)699 and especially the case of Tucker vs Mobile

Infirmary 68 So.4 -But as said by our own Supreme Court;we find the great weight of authority opposed to the views expressed in the Tucker case,by the Alabama Court.

we perceive no diffirence in principle,in the responsibility of a hospital in the employment of a physician and of a nurse.

If it is not liable for the malpractice committed by a licensed registered physician of good reputation employed by it,by a parity of reasoning it cannot be responsible for the errors or negligence of a graduated nurse,and the authorities are to that effect.

It is therefore ordered that the judgment herein be affirmed.

November 13th 1922.