J. Howard McGrath, *Ex'r vs.* Edward F. Tobin.

MARCH 31, 1954.

Present:   Flynn, C. J., Baker, Condon and O'Connell, JJ.

Condon, J.   This is an action for damages under the general laws of Massachusetts, G. L. (Ter. Ed.) c. 229, for the death and for injuries resulting in the death of plaintiff's

testator in an automobile accident in that state. The case is here on plaintiff's exception to the decision of a justice of the superior court sustaining defendant's amended additional demurrer to the declaration.

The principal question raised by the exception is whether the trial justice erred in sustaining the demurrer on the ground that chapter 229 is a penal statute and therefore not enforceable in this state. The plaintiff contends that he erred because the full faith and credit clause of the federal constitution, article IV, section 1, obligates the courts of this state to enforce the Massachusetts statute regardless of the fact that this court has heretofore held that such statute is penal and therefore unenforceable in this state. For such contention he relies on *Hughes* v. *Fetter*, 341 U. S. 609, and *First National Bank of Chicago* v. *United Airlines, Inc.*, 342 U. S. 396. He claims that those cases now make it certain that the term "public acts" in the full faith and credit clause includes legislative acts and that as a matter of national policy each state must enforce such acts of every other state whether they are deemed penal or not.

It has been generally assumed that no state executes the penal laws of another state. *The Antelope*, 10 Wheat. 66, 123; *State of Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *Huntington* v. *Attrill*, 146 U. S. 657. On such assumption this court has held to be penal a Massachusetts statute which was essentially the same as chap. 229. *McLay* v. *Slade*, 48 R. I. 357. In doing so we followed an earlier decision to the same effect. *O'Reilly* v. *New York & New England R. R.*, 16 R. I. 388.

We recently reaffirmed the underlying principle of those cases in *Robinson* v. *Norato*, 71 R. I. 256. Since then the United States supreme court has decided that under the supremacy clause of the federal constitution we must enforce a federal statute even though we deem it penal. *Testa* v. *Katt*, 330 U. S. 386. But as far as we are aware that court has never held that the full faith and credit clause requires

one state to enforce the penal statutes of a sister state. On the contrary it would seem that the court recognized a distinction between such statutes and a penal statute of the United States since in the *Testa* case it stated at page 389: "It cannot be assumed, the supremacy clause considered, that the responsibilities of a state to enforce the laws of a sister state are identical with its responsibilities to enforce federal laws."

However, in neither the *McLay* nor the *O'Reilly* case was it contended that the full faith and credit clause obligated us to enforce the Massachusetts statute even though we deemed it penal. In each case the question was one of conflict of laws and not of constitutional law. And each case was decided many years before *Hughes* v. *Fetter, supra.* For these reasons plaintiff argues that our cases have no force or effect on the decision of the constitutional question in the case at bar. Strictly speaking this is true but nevertheless those cases are of value as illustrations of long-continued and universal judicial assumption that penal statutes of the states are not within the purview of the full faith and credit clause.

Of course if the *Hughes* case or the *First National Bank of Chicago* case had decided that that clause did obligate one state to enforce the penal statutes of another, that would be the end of the matter and the prior general acceptance by courts and counsel of a contrary concept would be of no consequence. But as we read the opinions in those cases we do not think the court intended to go that far. Certainly neither case involved a penal statute.

In the *Hughes* case a Wisconsin court refused to entertain a suit under an Illinois statute for a death which occurred by alleged wrongful act in that state. The ground for the refusal was the professed policy of the Wisconsin statute which provided that an action for death by wrongful act would lie only for such a death caused in Wisconsin. The Illinois statute was similar and there was no suggestion that

either was penal. The supreme court of the United States reversed the Wisconsin judgment substantially on the ground that the federal full faith and credit clause was in effect the pronouncement of a national policy with reference to the conflicting laws of the states, and that as far as a mere choice of policy was concerned the case presented a choice between the national policy and the policy of Wisconsin and the latter had to give way. The logic of the opinion seems to be that a state cannot have a policy of its own with reference to opening its courts to suits under certain kinds of statutes if it conflicts with the statute of a sister state, because there is a national policy inherent in the credit clause which obligates it to entertain such suits. The novelty of this doctrine apparently did not find easy acceptance judging from the dissenting opinion subscribed to by four of the justices.

The *First National Bank of Chicago* case presented a problem similar to the *Hughes* case but with the variant feature that it was commenced in a federal district court because of diversity of citizenship of the parties. The action was brought in Illinois under the death by wrongful act statute of Utah in which state the death occurred. The district court dismissed the case on the ground that the Illinois statute provided that such an action could not be prosecuted in its courts "for a death occurring outside of this state where a right of action for such death exists under the laws of the place where such death occurred and service of process in such suit may be had upon the defendant in such place."

Under *Erie R. R.* v. *Tompkins*, 304 U. S. 64, the district court felt itself obliged to apply Illinois law. The court of appeals affirmed that view. In the supreme court the plaintiff contended first, that in a diversity case a federal court was not bound by the *Erie R. R.* case, and secondly, that the Illinois statute violated the credit clause. The court pretermitted the first contention and upheld the second on

the authority of the *Hughes* case. The decision on that basis received the assent only of the five justices who subscribed to the majority opinion in the *Hughes* case. The others dissented. However, two of them concurred in the decision itself on the basis of the plaintiff's first contention. As in the opinion in the *Hughes* case, there was no reference to the effect of the credit clause on penal statutes.

Notwithstanding the absence in the opinions in those cases of any reference to penal statutes, plaintiff here urges us to conclude therefrom that the supreme court will hold, when an appropriate case comes before it, that such statutes must also be enforced in accordance with the doctrine of national policy implicit in the full faith and credit clause. We do not think that we should speculate on what that court's decision will be in such a case. Moreover we are not disposed to accept in advance so broad a conception of the impact of the full faith and credit clause, especially because it subverts not only over a century and a half of judicial thinking and writing on the clause but also the contemporary construction of it by the first congress in whose membership were some of the most prominent framers of the federal constitution.

We have come a long way in our interpretation of the full faith and credit clause since the framers practically lifted it from the articles of confederation and, after little or no debate as to substance and with slight amendment, incorporated it as section 1 of article IV of the constitution. See "The Authenticated Full Faith and Credit Clause: Its History" by Max Radin, 39 Ill. L. Rev. 1. It would seem that for many years thereafter that clause was deemed applicable only to judgments. At least congress implemented it by statute only to that extent. 28 U. S. C. (1940 ed.), §687. Gradually, however, after repeated statements in the opinions of state and federal courts that the term "public acts" meant legislative acts the supreme court declared in *Bradford Electric Light Co.* v. *Clapper,* 286 U. S.

145, 154: "That a statute is a 'public act' within the meaning of that clause is settled."

This apparently put the stamp of disapproval on a statement by a state court such as: "* * * of course, the full faith and credit clause of the Federal Constitution does not relate to the statutes of a sister jurisdiction * * *." *Wellman* v. *Mead,* 93 Vt. 322, 326. And yet such a statement harks back to the thought of an earlier day contemporaneous with the framers of the constitution that the clause was designed to obtain among the states conclusive recognition of the judgments of each other's courts of record in place of mere prima facie recognition which was theretofore the practice in the exercise of comity. See *Hilton* v. *Guyot,* 159 U. S. 113, 181, and *Rathbone* v. *Terry,* 1 R. I. 73.

Since those early days of the constitution with its new concepts of national union and necessary restraints upon unlimited sovereignty of the states down to the day of *Hughes* v. *Fetter, supra,* the supreme court of the United States has given a wide extension to what was once thought to be intended by the inclusion of the term "public acts" in the full faith and credit clause. But it has not, so far as we are aware, ever indicated that such clause restrained the sovereign right of a state to refuse to open its courts for the enforcement of the penal laws of other states.

On the contrary the supreme court has on occasion stated that the clause does not compel a state to enforce such laws. It has even held that in a suit on the judgment of another state the forum state may examine the cause of action merged in such judgment and if it finds that the action was based on a penalty it may refuse to enforce the judgment. *Huntington* v. *Attrill,* 146 U. S. 657. The supreme court itself has refused, on the principle of law that no state executes the penal laws of a foreign state, to entertain under its original jurisdiction a suit brought by the state of Wisconsin to enforce a judgment based on a penal statute of that state. *State of Wisconsin* v. *Pelican*

*Ins. Co.,* 127 U. S. 265, 291. Those cases are in effect authorities for the proposition that the full faith and credit clause has not impaired the right of a state, in accordance with the well-established principle of private international law, to refuse to entertain suits for the enforcement of the penal statute of another state.

From our examination of the cases and some of the legal literature on the full faith and credit clause, we have concluded that the supreme court has not finally decided how far it will go in holding legislative acts to be "public acts" within the meaning of that clause. That court may well decide to re-examine the entire question. It is by no means certain that the framers intended that all legislative acts should be given credit along with "records and judicial proceedings." On the contrary it is reasonably inferable that they intended to include only acts that were akin to judgments. It is a matter of historical record that at the time of the adoption of the federal constitution some if not all of the state legislatures possessed judicial power and that in registering their decisions in the exercise of such power they did so by act or resolution rather than by entering judgment as a court would do. Such acts were recognized as judgments. See *Maynard* v. *Hill,* 125 U. S. 190, and *Starr* v. *Pease,* 8 Conn. 541. In this state the general assembly exercised judicial power in a wide diversity of cases until after the adoption of the state constitution in 1842. See *Taylor & Co.* v. *Place,* 4 R. I. 324, 344, and *Wilkinson* v. *Leland,* 2 Peters 627, 633.

That this situation may have been in the minds of members of the Continental Congress when the articles of confederation were drafted is not at all unlikely. The clause appeared in article IV as follows: "Full faith and credit shall be given in each of these states to the records, acts, and judicial proceedings of the courts and magistrates of every other State." This is reported to be the work of Richard Law, a delegate in congress from Connecticut. 39

Ill. L. Rev., p. 4, note 9, and p. 5, note 11. Law had been judge of the New London county court in his state and in 1784 became a judge of its superior court. As a judge he was undoubtedly familiar with the fact that the legislature of his state exercised judicial power and hence he saw the necessity of including the word "acts" in the credit clause so that there would be no question that the judgments of the legislature although entitled "acts" would be accorded the same credit as the judgments of the regularly established courts.

When the constitutional convention considered this matter they took the clause from the articles of confederation. They retained its basic purpose although they revised its phraseology so as to read: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." And then they added something entirely new: "And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." As originally proposed by the committee to which the clause was referred that provision read: "and the Legislature shall in general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect which *judgments* obtained in one State shall have in another." (italics ours) But on the motion of Gouverneur Morris of Pennsylvania the word "thereof" was substituted for the words "which judgments obtained in one state shall have in another." 39 Ill. L. Rev., p. 7.

Such revision appears to have been a matter more of style than of substance. This seems quite likely since Morris was recognized for his literary ability and was later appointed to head the committee to revise the style and arrange the articles of the constitution. One writer has said of that committee: "While it is not certain, it is believed that its work was largely that of Gouverneur Morris." The Constitution of the United States by James

M. Beck, p. 160. He describes Morris' chief qualification as "an incomparable gift of expression" but then adds that "he did not prove at all times a serviceable member of the Convention." Id. at 68.

What Morris himself intended by his amendment does not appear from the available records. However, the first congress appears to have construed it as not making any substantial change in the new addition to the original clause. In their act implementing the clause they provided for the effect only of records and judicial proceedings and said nothing as to the effect of acts. 1 Stat. 122 (1790). Since then and until 1948 that remained the congressional interpretation. 2 Stat. 298 (1804), R. S. (2d ed. 1878), sec. 905, p. 171. That interpretation was ended with the amendment of 1948, 28 U. S. C. A., §1738, providing that public acts shall have the same credit in every court in the United States, its Territories and Possessions as they now have by law or usage in the place from which they are taken.

The plaintiff argues that this change in some way fortifies his contention that statutes of every kind are now entitled to be enforced in every state. We do not agree. The action of congress did not and could not add anything to the scope of the credit clause itself. It merely placed the congress in line with the current of cases wherein the supreme court had already declared that statutes in certain categories were entitled to be given the same credit accorded to judgments. Apparently the supreme court does not share the plaintiff's view of the import of that amendment, for in *Hughes* v. *Fetter, supra,* referring to it in note 16, the court stated: "* * * we have found it unnecessary to rely on any changes accomplished by the Judicial Code revision."

Notwithstanding what has been said here concerning the meaning of the term "public acts," it is altogether probable that the trend toward making that term synonymous with legislative acts will not be reversed. However, that it will

be still further extended beyond the point to which it has now been advanced by the *Hughes* case is not equally probable. There is every reason to believe that any further extension of the scope of the clause so as to make it apply to penal statutes will bring a multitude of new and difficult problems to the supreme court. They are already difficult enough to prompt one member of the court to say in a public lecture: "Questions as to faith and credit for foreign law seem inherently more difficult than questions as to recognition of judgments." And he went on to point out: "Plainly quite different inquiries must be made and different principles applied to this class of questions than to issues as to the recognition of judgments. Such questions lead into consideration of the powers of independent and 'sovereign' states and the limitations which result from their uniting in the Federal Compact. These questions are of extraordinary complexity and delicacy." 45 Col. L. Rev. 1, 11. Should that court hereafter declare that penal statutes must be given the extraterritorial effect accorded to other statutes and to judgments it will surely multiply such complexities manyfold and raise even more delicate problems for solution. In any event in the absence at this time of any binding decision precisely on the point we need not anticipate what its decision may be if and when it is called upon to decide the question.

The plaintiff, however, makes a further contention in support of his position. Granted that the credit clause does not require a state to enforce the penal laws of another state, he argues that we should nevertheless enforce chapter 229 because it is not a penal statute within the meaning of that term as the supreme court has defined it in *Huntington* v. *Attrill,* 146 U. S. 657. And he further argues that in determining whether a particular statute falls within or without the scope of the full faith and credit clause we must test such statute by that definition. This, he claims, is indicated by the statement in *Hughes* v. *Fetter, supra,*

that in such a matter involving the national policy under that clause the supreme court is the final arbiter.

We cannot agree that such contention is applicable in determining what is a penal statute. On the contrary the true test is specifically stated in *Huntington* v. *Attrill, supra,* and upon that test we rely. There it was said at page 683: "The test is not by what name the statute is called by the legislature or the courts of the State in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person." Not only do we regard chapter 229 to be penal but the supreme court of Massachusetts does likewise. See *Brown* v. *Thayer,* 212 Mass. 392, 399.

The plaintiff makes a final contention on this point. He argues that by virtue of a recent amendment of our own death by wrongful act statute, public laws 1949, chap. 2332, it is also penal, and therefore to avoid discrimination in its favor we are bound to enforce the Massachusetts statute. This description of our statute as amended is not strictly accurate. However, assuming that it is, this would not be a valid reason for giving extraterritorial effect to a penal statute. Because we enforce our own penal statutes is no reason why we should enforce those of other states. If so we would be compelled to enforce foreign criminal statutes as they also are included under the term penal.

In addition to the constitutional question above discussed, plaintiff contends that the second and third counts of his declaration are not demurrable on the ground that they are based on a penal statute, since the second count is based entirely and the third count in part on a provision in the Massachusetts act which is independent of the provisions for recovery for death which we deem penal. We find no merit in this contention. Having brought his suit expressly under the provisions of chapter 229 and included

in his declaration thereunder a separate count at common law for conscious suffering resulting from the same injury he did so only on the specific authority of that chapter, *Dermody* v. *Utley*, 328 Mass. 209, and therefore, all counts so tied to the action for death must fall with it.

In view of our conclusion that the action in its entirety cannot be maintained in this state, the plaintiff's other contentions become immaterial and need not be considered.

The plainitff's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Crowe & Hetherington, Benjamin C. Chester,* for plaintiff.

*Worrell & Hodge, Lee A. Worrell,* for defendant.