243 A.2d 917.

LEWIS E. WOODWARD *vs.* JOHN A. STEWART *et al.*

JULY 9, 1968.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J.   This is a civil action brought by the plaintiff

pursuant to the provisions of G. L. 1956, chapter 7 of title 10, as amended, known and cited as the Wrongful Death Act, for the death of Lewis E. Woodward, III, whose death resulted from an automobile accident occurring on Interstate Route 195 in the commonwealth of Massachusetts.

The plaintiff's decedent was a passenger in an automobile owned by defendant Catherine Stewart and being operated with her consent by defendant John A. Stewart. All the parties above mentioned are Rhode Island residents, and were returning to Barrington, Rhode Island, from a trip which originated in Barrington, Rhode Island, with a stop in Newport, Rhode Island, but which included for the purposes of convenience a short trip through Seekonk, Massachusetts.

The parties had left Barrington for a dinner engagement in Newport, after which they were returning to Barrington. At their intended exit from the interstate highway, and while still in Massachusetts, the car in which they were traveling collided with an automobile owned by Robert H. Halben of Johnston, Rhode Island, and being operated with his consent by Walter L. Douglas, Jr., of North Providence, Rhode Island, as a result of which Lewis E. Woodward, III, suffered injuries and died.

The complaint was brought in the superior court for Providence county on June 30, 1966. The defendants duly filed their answer, and on May 2, 1967, moved that the case be dismissed on the pleadings pursuant to rule 12c of the rules of civil procedure of the superior court. After a hearing, the trial justice granted the motion and plaintiff duly claimed an appeal.

In support thereof, he argues in substance that the trial justice granted defendants' motion on the basis of the strict *lex loci delicti* theory of conflict of laws but that because of the more recent and changing trends in this field, he should have denied the motion and permitted the case to proceed

to trial under the Rhode Island Wrongful Death Act. The trial justice, it is to be noted, was well aware of the changing trends in this field, but was unwilling as a nisi prius court justice to decide that Rhode Island should depart from what had heretofore been established law and follow the recent line of decisions from other jurisdictions. Accordingly, he granted the motion to dismiss, thus facilitating consideration by this court of the policy question presented.

Squarely raised then is the question of whether Rhode Island should abandon its long-standing rule that the law of the place of the tort shall govern the rights of an injured party,[1] and adopt the principle which dissects an action into various elements, and governs each individual element or issue by the law of the jurisdiction which has the most significant contacts relative thereto.[2] This, plaintiff argues, will result in the equitable resolution of all cases and will avoid the harsh results of the strict application of the *lex loci delicti* doctrine.

The objections to the application of this significant contacts or center of gravity approach to litigation is that the merits of the *lex loci delicti* doctrine—uniformity, predictability, and certainty of result—will be lost. Both bench and bar, it is urged, will be faced with a case to case, or ad hoc approach wherein different forums will be able to apply the laws of different jurisdictions to different parties for injuries resulting out of the same accident or occurrence.[3]

---

[1] See *Pendar* v. *H. & B. American Machine Co.*, 35 R. I. 321, 87 Atl. 1 (1913); *Kwasniewski* v. *New York, N. H. & H. R. R.*, 53 R. I. 144, 164 Atl. 558 (1933); *O'Reilly* v. *New York & N. E. R. R.*, 16 R. I. 388, 17 Atl. 171 (1889).

[2] Variously described as the "significant contacts" "center of gravity" and "grouping of contacts" theory. See cases listed in footnote 11 *infra*.

[3] It was such a contention that persuaded the Delaware court in *Friday* v. *Smoot*, Del. , 211 A.2d 594, to decline to abandon the *lex loci delicti* doctrine in favor of the "flexible approach."

An analysis of the cases relied on by the contending parties here, however, persuades us that the *lex loci delicti* theory of conflicts of law in tort cases has lost much of the thrust of its original merit through changes in modern business, recreation and transportation.

When the doctrine was first established in the mid-nineteenth century, the situation in this country was such that people rarely crossed state boundaries. Under such circumstances, there was validity in a rule which presumed that persons changing jurisdictions were aware of the duties and obligations they were incurring because of such a change. Even if they were not, requiring them to be subject to the laws in the jurisdiction in which they were injured was viewed as justified because of the vested rights doctrine that was prevalent at the time.[4]

The present day situation, however, has changed all that. Millions of American citizens daily cross state boundaries, and many of them cross multiple state boundaries during the course of a single day. The case at bar is a prime example of the relative insignificance which today's citizens place on passing through different jurisdictions. The only reason that the Stewart car was in Massachusetts was that Interstate Route 195 was a convenient route between the two Rhode Island communities. At the time of the accident, deceased, being a passenger, may well not have been aware that he was in Massachusetts.

Increased interstate activity alone, it is argued, does not warrant us in disrupting the doctrine of stare decisis and adopting a new rule when the prior rule has otherwise retained its merit. We might be inclined to agree if that were the situation, but our research indicates the *lex loci delicti* doctrine has not retained its hallmarks of validity—those of providing uniformity and predictability of results and cer-

---

[4]Page, *Conflict Of Law Problems In Automobile Accidents,* 1943 Wis. L. Rev. 145, 150, and cases cited in footnote 19 thereof.

tain formulae by which individuals could govern their actions in accordance with foreseeable legal consequences.

Very early within the development of that doctrine, it became well recognized by the courts and text writers that a forum in a conflicts situation was free to apply its own procedural rules to rights and liabilities arising under the substantive laws of a foreign jurisdiction.[5] Litigants' rights were not entirely controlled by the law of the place where the tort occurred, and the results and applicable law were not always easily predictable. Courts found that labeling a matter as substantive or procedural, was often a subjective determination to be made by the forum court, and the guidelines used in making such determinations were not very often open to objective classification or criticism. Thus, when a court met a hard case in which it had to decide whether a particular matter was substantive or procedural—and there was a serious question raised as to which label to apply—the courts found that they had considerable latitude to characterize the matter as procedural and govern the case by the law of the forum.[6]

Furthermore, if a forum confronted a hard case and there was no rationale upon which the controlling matters could be labeled as procedural, it could always apply the rule that it is not constitutionally obligated to give full faith and credit to a foreign jurisdiction's laws if to do so would violate some "public policy" of the forum state.[7]

The strict *lex loci delicti* doctrine, as it was being applied by the courts in the first half of the twentieth century, therefore, no longer provided the uniformity of result con-

[5]For an illuminating discussion presaging an awareness by the courts of weaknesses in the *lex loci delicti* doctrine, when viewed in light of modern social patterns, see *Page, supra,* especially p. 153 thereof.

[6]See *Kilberg* v. *Northeast Airlines, Inc.,* 9 N. Y. 2d 34, 211 N. Y. S. 2d 133, 172 N. E. 2d 526.

[7]*Id.*

sidered to be its primary virtue. This undermined the justification for its use when the effect was to override a forum's domestic law in cases in which the forum had the principal interest.

Of course a forum court is not constitutionally free to apply its own laws to every element of every tort case brought before it.[8] The full faith and credit, due process, and equal protection clauses of the federal constitution still require that the forum have some rational basis for applying its own laws to a tort or injury which occurred in a foreign jurisdiction and which is being litigated in the forum.

It is these constitutional requirements, and the above-mentioned dissatisfaction with the *lex loci delicti* doctrine, that have prompted courts to search for new rules to govern conflicts cases in the area of tort law.

The first cases to depart from the *lex loci delicti* doctrine, without expressing a substantive - procedural distinction or public policy rationale, were decided in the late fifties.[9] These cases all involved the question of whether the interspousal immunity statutes of the locus would govern a suit brought in the domicile forum, and all stand for the proposition that a cause of action may be split into a variety of elements and that there is no reason why all the elements of a case must be resolved by the substantive law of the same state.

Because these cases involved the status of family members to sue one another, a status that has long been recog-

---

[8]Leflar, *Constitutional Limits On Free Choice Of Law,* 28 Law and Contemporary Problems 706 (1963). But see *Richards* v. *United States,* 369 U. S. 1, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962), and *Pearson* v. *Northeast Airlines, Inc.,* 309 F.2d 553, 92 A. L. R. 1162, *cert. denied* 372 U. S. 912, 83 S. Ct. 726, 9 L. Ed. 2d 720 (1963).

[9]*Haumschild* v. *Continental Casualty Co.,* 7 Wis. 2d 130, 95 N.W.2d 814 (1959); *Emery* v. *Emery,* 45 Cal. 2d 421, 289 P.2d 218 (1955); *Koplik* v. *C. P. Trucking Corp.,* 27 N. J. 1, 141 A.2d 34 (1958).

nized to be governable by the law of the domicile for purposes of marriage, divorce, probate, etc., and because the courts in those cases expressly disaffirmed the contention that they were rejecting "* * * the general rule that ordinarily the substantive rights of parties to an action in tort are to be determined in the light of the law of the place of wrong,"[10] they have not been heralded as radical departures from the *lex loci delicti* rule. The fact remains, however, that these cases do stand for the proposition that a forum may have sufficient interest in the outcome of a particular issue, to apply its own substantive laws in making a determination thereof.

Court after court has adopted some aspect of this interest weighing approach to litigation.[11] True, as defendants argue, the courts have been guarded in their approach to this new theory and have not often openly declared that they were totally abandoning the *lex loci delicti* doctrine and applying their own substantive rules and laws extra-territorially. The clear import of the line of cases adopting the rule of flexibility, however, is that a forum court is free to apply the substantive laws of a state, other than the locus, when it finds that such state has the significant interest in the outcome of those issues.

The defendants would have us limit the application of this theory to those cases wherein the rights being litigated are based on the common law for their existence. They ar-

---

[10]*Haumschild, supra,* 7 Wis. 2d 130, 140, 95 N. W. 2d 814, 819.

[11]*Babcock* v. *Jackson,* 12 N. Y. 2d 473, 191 N. E. 2d 279 (1963); *Long* v. *Pan American World Airways, Inc.,* 16 N. Y. 2d 337, 213 N.E.2d 796 (1965); *Thompson* v. *Thompson,* 105 N. H. 86, 193 A.2d 439; *Fabricius* v. *Horgen,* 257 Iowa 268, 132 N. W. 2d 410 (1965); *Griffith* v. *United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *Wessling* v. *Paris,* Ky. , 417 S. W. 2d 259 (1967); *Casey* v. *Manson Construction & Engineering Co.,* 247 Ore. 274, 428 P.2d 898 (1968); *Kopp* v. *Rechtzigel,* 273 Minn. 441, 141 N. W. 2d 526 (1966); *Reich* v. *Purcell,* 63 Cal. Rptr. 31, 432 P.2d 727 (1967); *Mellk* v. *Sarahson,* 49 N. J. 226, 229 A.2d 625 (1967); *Myers* v. *Gaither,* D. C. App., 232 A.2d 577 (1967).

gue that the doctrine has no validity when the rights being enforced are based on statutory enactment, because to do so would be to give force to that law extraterritorially, *ex proprio vigore*. We disagree. Once a forum has established sufficient interests to warrant applying its own substantive laws to a given issue, without violating the full faith, due process, or equal protection clauses of the federal constitution, it follows that the forum is warranted in applying its own substantive laws whether those laws are based on common-law rights, or whether they depend totally upon statutory enactment for their existence. The extraterritorial application is no greater in the latter instance than in the former.[12] In each case the forum is applying the substantive law of the jurisdiction with the most significant contacts.

An analysis of our statute reveals no expressions of intent to limit its application to accidents occurring within Rhode Island boundaries. Indeed, by the language it employed in §10-7-1, the general assembly would appear to have signified an intention to the contrary.

This section provides:

> "Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death

---

[12]See *Maffatone v. Woodson*, 99 N. J. Super. 559, 240 A.2d 693 (1968) wherein the New Jersey forum court applied a New York automobile ownership liability statute to an accident which occurred in New Jersey, holding that all the significant contacts were in New York.

shall have been caused under such circumstances as amount in law to a felony."[13]

Neither do the Rhode Island cases cited by defendants stand for such a limited application.[14] In all those cases, the law of the place of the injury was chosen over Rhode Island law in deference to the *lex loci delicti* rule and not because the court was of the opinion that the Rhode Island statute was limited by its terms to Rhode Island occurrences.

The interest-weighing approach to conflict of law cases is indeed the better rule, and justice will be more equitably administered if the Rhode Island courts apply that rule to tort conflicts cases coming before them. All prior cases that are inconsistent with this view are hereby overruled.

Merely abandoning the *lex loci delicti* rule and adopting the new interest-weighing approach will not, however, create an improved situation, will have no precedential value for our future decisions, and will not serve as a guide for the bench and bar, unless some standards are set forth by which cases may be decided consistently.

Various authorities have attempted to summarize the interests that should be weighed in deciding which jurisdiction has the more significant interest with reference to a particular issue.[15] All have merit, but it would serve no

---

[13]In *Marmon* v. *Mustang Aviation, Inc.,* filed May 18, 1968, 36 U. S. L. W. 2737, the Supreme Court of Texas refused to give extraterritorial application to the Texas Wrongful Death Act. Its decision, however, was motivated out of deference to what it felt to be a legislative prerogative. Query, would the Texas court have reached the same result had it been confronted with the Rhode Island statute? See also, *Hopkins* v. *Lockheed Aircraft Corp.,* Fla., 201 So. 2d 743 (1967).

[14]See cases cited n footnote 1, *supra.*

[15]e. g. Cavers, *The Choice-of-law Process* (1965), U. of Mich. Press; Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N. Y. U. L. Rev. 267 (1966); Leflar, Conflicts Law: *More on Choice-Influencing Considerations,* 54 Calif. L. Rev. 1584 (1966); Cheatham & Reese, *Choice of the Applicable Law,* 52 Colum. L. Rev. 959 (1952); Restatement (Second), *Conflict of Laws* (Tentative Draft Number 9 (1964), §379.

useful purpose for us to extend this opinion by giving an in-depth explanation of our views on the various considerations advanced. Suffice it to say that the Supreme Courts of at least two of our sister jurisdictions, namely, Wisconsin and New Hampshire,[16] have considered this problem and on cogent reasoning and analysis have found merit in the guidelines first enunciated by Dean Leflar.[17] These are:

> (1) Predictability of results.
> (2) Maintenance of interstate and international order.
> (3) Simplification of the judicial task.
> (4) Advancement of the forum's governmental interests.
> (5) Application of the better rule of law.

Like the Supreme Court of Wisconsin, we are persuaded that those guidelines combine a "workable brevity" with a "reasoned analysis," leading this court to their application when faced with a conflicts of law situation.

Turning finally to a consideration of the instant case, the facts present a relatively simple conflicts situation under the flexible approach hereby adopted. Both Massachusetts and Rhode Island have wrongful death statutes. It is only this court's holding in McGrath v. Tobin, 81 R. I. 415, 103 A.2d 795, and the penal aspects of the Massachusetts statute that create an apparent conflict between the laws of the two states. All the interest factors, other than the fortuitous locus of the accident, point to the application of Rhode Island law. All the parties involved were Rhode Island residents, their trip started in Rhode Island and was to end in Rhode Island, the guest-host relationship arose in Rhode Island and suit was commenced in Rhode Island. Massachusetts, therefore, would appear to have no interest in the outcome of this case other than how it might im-

---

[16]Heath v. Zellmer, 35 Wis. 2d 578, 151 N. W. 2d 664 (1967); Clark v. Clark, 107 N. H. 351, 222 A.2d 205 (1966).

[17]Leflar, 41 N. Y. U. L. Rev. 267 (1966). ,

pinge on that commonwealth's determination of what constitutes negligent operation of motor vehicles on its highways. Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and the measure of damages to be applied are to be governed by the law of Rhode Island. And, while on the record before us there appears to be no other issue raising a genuine conflict of laws, should another conflict arise in the course of this litigation, the court should apply the law of Rhode Island unless counsel can, in accordance with the guidelines set out in this opinion, convince the court that Massachusetts has a more significant interest.

The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the superior court for further consideration in accordance with this opinion.

*Graham, Reid, Ewing, & Stapleton, Owen P. Reid* and *Edward J. Regan,* for plaintiff.

*Weller & Wilkins, S. Everett Wilkins, Jr., Roberts & McMahon, Richard P. McMahon* and *Dennis J. Roberts, II,* for defendants.