April 11, 2022

**Supreme Court**

No. 2020-29-Appeal.
(NP 17-205)

The Smile of the Child        :

v.                            :

The Estate of Matoula Papadopouli.    :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Smile of the Child          :

v.                              :

The Estate of Matoula Papadopouli.    :

Present: Suttell, C.J., Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The probate case underlying this appeal involves an international will dispute impacting the probate of the estate of the decedent, Matoula A. Papadopouli (the decedent), who held dual citizenship in the United States and Greece. The plaintiff, To Hamogelo Toy Paidiou, a/k/a The Smile of the Child,[1] appeals from a Superior Court judgment affirming an "order of the Middletown Probate Court regarding the Estate of Matoula Papadopouli" (the estate) "and denying the appeal of [the plaintiff]." On appeal before the Supreme Court, the plaintiff asserts that the Superior Court trial justice erred in (1) determining that a true conflict exists between Rhode Island and Greek law; (2) applying Rhode Island law rather than Greek law; (3) allowing the payment of fees and costs incurred

---

[1] The parties stipulate that plaintiff "is a voluntary, non-profit child welfare organization based in Athens, Greece; with the stated purpose of protecting and promoting the rights of all children."

- 1 -

in a foreign will dispute as administrative costs payable from assets of the estate; and (4) determining that Rhode Island law does not allow for disgorgement. The plaintiff therefore asks this Court to reverse the decision of the Superior Court trial justice and to direct the trial justice to order that the administratrix disgorge and return the funds expended "in violation of the [a]dministratrix's duty." For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The decedent was born in Newport, Rhode Island, on January 12, 1955. In addition to holding dual citizenship in the United States and Greece, she owned property in both countries, including in Rhode Island. In October 2014, she was diagnosed with stage IV gliosarcoma, a rare form of malignant cancer of the brain. The decedent passed away in Volos, Greece, on October 4, 2015. At the time of her death, the decedent was unmarried, her parents had predeceased her, and she had no children.

After the death of the decedent, an administration petition was filed in the Middletown Probate Court, seeking the appointment of Cynthia Kendall—the decedent's cousin—as the administratrix; according to the estate, Kendall's father, Charles Michael, was the decedent's next of kin at the time of her passing. On

October 28, 2015, the petition was granted, and Kendall was appointed administratrix of the estate.

Meanwhile in Greece, plaintiff presented a holographic will that plaintiff asserts was drafted by the decedent on October 2, 2013, two years prior to her death, naming plaintiff as the sole beneficiary of the entirety of her estate, with the exception of a life estate in her home in Skiathos, Greece, to Ioannis Kontomanis. On March 21, 2016, Michael[2] filed a lawsuit before the Court of First Instance in Volos, Greece, and requested that the Greek court declare the holographic will void on the grounds that it was not drafted by the decedent herself.

The estate attached an expert handwriting analysis to a written submission in the Superior Court in the present case; the analysis concluded that the holographic will was written by a third party and that the decedent's purported signature was written sometime after the year 2013 at a time "when her brain disorder had already emerged, leading to the corresponding effects on her cognitive functions."[3]

---

[2] We note that the joint statement of stipulated facts identifies Charles Michael as both "the Uncle of the decedent" and as "a cousin of the decedent[.]" Because it is undisputed that Michael was the decedent's next of kin at the time of her passing, their exact familial relationship is inconsequential.

[3] We note that Michael has since passed away and that his wife has been substituted in the Greek litigation. Furthermore, the parties informed the Court at oral argument in September 2021 that the Greek court ruled in favor of plaintiff and found the holographic will to be valid; the case is now making its way through the Greek court system's appellate process.

On or about May 26, 2016, plaintiff filed a petition in the Middletown Probate Court requesting that the probate court enter an order (1) directing the administratrix to identify assets of the estate that are subject to administration; (2) directing the administratrix to return funds that were distributed or obtained by the estate until the final determination of the proper beneficiary; and (3) staying any further administration of the estate until the disposition of the Greek litigation. A hearing on the petition was held on July 19, 2016. On August 30, 2016, the probate court ordered (1) the administratrix to identify and take possession of the assets of the estate; (2) the administratrix to identify any estate asset that was distributed and take appropriate steps to have those assets returned to the estate; (3) that there shall be no distribution of the estate assets pending final disposition of the Greek litigation or by further order of the probate court; and (4) the administratrix and plaintiff to, within seven days, disclose any additional information they had regarding the assets of the estate in the United States, Greece, or elsewhere. The estate assets included bank accounts at BankNewport, Stifel Bank, and ABN-AMRO Bank. The plaintiff thereafter sent a letter to Stifel Bank claiming that it was the sole devisee of the estate and requesting that the bank freeze all accounts held in the decedent's name; Stifel Bank complied.

On February 7, 2017, the administratrix, having already utilized the money in the BankNewport account, filed a miscellaneous petition with the probate court

requesting an order granting her full access to all of the estate's accounts in order to pay expenses related to protecting and maintaining estate assets during the pendency of the will contest in Greece, including expenses relative to the will contest itself, to which plaintiff objected. On March 15, 2017, the probate court held a hearing on the miscellaneous petition. On April 13, 2017, the probate court issued an order (1) lifting the freeze on the Stifel Bank account; (2) allowing the administratrix to access the Stifel Bank account to pay for costs associated with the will contest in Greece, finding that such costs were "an extension of the administration of the Estate and her duty to protect and defend the Estate assets"; and (3) requiring any additional payments to be approved by the probate court. The plaintiff thereafter filed an appeal of the probate court order in the Superior Court.

After the parties filed written memoranda, a hearing was held in the Superior Court on July 25, 2019. The plaintiff argued that the probate judge had erred by failing to apply Greek law. The plaintiff contended that, because "the dispute [over the validity of the holographic will] is between a Greek citizen who has challenged the [w]ill, and a Greek corporation," Greek law should apply to preclude the administratrix from using estate assets to fund costs and fees associated with the will contest in Greece. The plaintiff asserted that, under Greek law, "it is just totally unheard of for a [c]ourt to order the payment of attorney's fees and costs in regard to a [w]ill contest[,]" and that, "if there was a payment on it under Greek law, it

would actually be a criminal offense." The plaintiff also submitted an affidavit from a Greek attorney to that effect, the accuracy and veracity of which was not challenged by the estate.

The plaintiff further argued that, even if Greek law did not apply, there is no basis under Rhode Island law for fees and expenses associated with a will contest to be paid from the estate. The plaintiff contended that the probate court acted erroneously in calling the expenditures of the estate monies to support the will contest "an extension of" administrative costs because such expenses are not administrative fees.

The estate, in response, conceded that Greek law applies to determine the validity of the will; however, the estate argued that the question before the Superior Court was, "what are the duty and the rights of the administrat[rix] here in Rhode Island while that Greek action is pending[?]" The estate asserted that the probate court "was correct and reasonable" in determining that the administratrix "had a duty to the estate beneficiaries to protect the assets of the estate" and needed "to execute that duty." According to the estate, the actions of the probate judge "were reasonable and allowable under Rhode Island law." Furthermore, the estate argued that, "since the administratrix was relying upon the [probate c]ourt's 2016 ruling, it would be inequitable * * * under those circumstances to require the administratrix to pay back

or reimburse funds that were expended prior to this appeal being filed since she was relying in good faith on the [p]robate [c]ourt's order."

The trial justice issued a written decision on October 25, 2019. The trial justice began his discussion of the choice-of-law issue by finding that there was a true conflict between Greek law and Rhode Island law. He determined that, under Rhode Island law, "an administrator is entitled to reimbursement from the estate for reasonable expenses incurred during the litigation because the administrator has a duty to defend the will," citing *McAlear v. McAlear*, 62 R.I. 158, 4 A.2d 252 (1939); G.L. 1956 § 33-22-26; and G.L. 1956 § 9-14-25, while, under Greek law, such administrative "fees and costs associated with a will contest are borne by the parties, and not the estate."

The trial justice then reviewed the facts of the case to determine which "state" bore the most significant relationship to the events and the parties. The trial justice cited *Najarian v. National Amusements, Inc.*, 768 A.2d 1253 (R.I. 2001), for the policy considerations that Rhode Island courts use in making a choice-of-law determination, including the "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Najarian*, 768 A.2d at 1255 (quoting *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986)). The trial justice noted that "[a]

- 7 -

court must have a rational basis for applying its own law, as required by the full faith and credit, due process, and equal protection clauses of the Federal Constitution." *See Woodward v. Stewart*, 104 R.I. 290, 296, 243 A.2d 917, 921 (1968). The trial justice determined that each of the factors favored Rhode Island, and, accordingly, he applied Rhode Island law to the case.

The trial justice then addressed plaintiff's assertion that Rhode Island law does not authorize the use of the estate's assets to fund a will contest in Greece. The trial justice found that § 33-22-26 "permits costs associated with reasonable expenses of the litigation" and that "Rhode Island law generally authorizes the reasonable sums of expenses and counsel fees associated with the litigation to be paid out of the estate in controversy[,]" citing to § 9-14-25 as an example.[4] He reasoned that costs of administering the estate "specifically include reasonable costs of litigation in defending the estate" and that "the [a]dministratrix has a fiduciary duty to defend

---

[4] General Laws 1956 § 9-14-25 states:

> "In any civil action or other proceeding wherein construction of a will or trust deed or any part thereof is asked, there may be allowed to each of the parties defendant brought in by the action or other proceeding, applying therefor, such reasonable sum for expenses and on account of counsel fees as the court in which the case is pending shall deem proper; the allowance shall be taxed as costs in the cause and be paid out of the estate or fund in the hands of the complainant concerning which estate or fund the construction is asked."

the will [*sic*] from potential fraudulent claims and is entitled to the fees and costs associated with this administrative duty."

The trial justice additionally reviewed the merits of the will contest, and, citing *Andrews v. Carr*, 2 R.I. 117 (1852), held that, "[i]n cases of possible undue influence, administrators are entitled to fees and costs associated with defending an estate from such potentially fraudulent claims." Thus, the trial justice concluded that "the [a]dministratrix is entitled to use the [e]state's assets to fund the Greek [l]itigation will contest[.]"

Additionally, the trial justice denied plaintiff's request that the administratrix disgorge all fees and costs paid in reliance on the probate court order. Judgment entered on November 5, 2019, affirming the April 13, 2017 order of the probate court. The plaintiff filed a timely notice of appeal to this Court on November 13, 2019.[5]

## II

### Standard of Review

"It is well established that a probate appeal to the Superior Court 'is *de novo* in nature.'" *Larkin v. Arthurs*, 210 A.3d 1184, 1190 (R.I. 2019) (deletion omitted) (quoting *Lett v. Giuliano*, 35 A.3d 870, 876 (R.I. 2012)). On our appellate review,

---

[5] In the Superior Court, defendant had asserted that plaintiff's probate appeal was barred by *res judicata*; because the parties have not argued this issue on appeal, however, we need not address it here.

however, "the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." *Id.* (quoting *In re Estate of Ross*, 131 A.3d 158, 166 (R.I. 2016)). "If, in our review of the record, 'it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for that of the trial justice even though a contrary conclusion could have been reached.'" *Id.* (brackets omitted) (quoting *In re Estate of Ross*, 131 A.3d at 166).

Questions of law and statutory construction, however, we review on a *de novo* basis. *See, e.g.*, *In re Estate of Ross*, 131 A.3d at 166. Furthermore, choice-of-law determinations are questions of law, which this Court reviews on a *de novo* basis. *See Webster Bank, National Association v. Rosenbaum*, 268 A.3d 556, 559 (R.I. 2022) (indicating that "our case law is replete with instances in which we in effect reviewed [choice-of-law issues] on a *de novo* basis") (quoting *Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 529 (R.I. 2011)); *King v. Huntress, Inc.*, 94 A.3d 467, 482 (R.I. 2014) (applying a *de novo* standard of review to a choice-of-law issue).

- 10 -

## Discussion

On appeal, plaintiff argues that the trial justice made multiple errors in his decision. The plaintiff contends that the trial justice erred by allowing payment of fees and costs incurred in a foreign will dispute to be paid from assets of the estate. To this point, plaintiff first asserts that there was no conflict between Rhode Island law and Greek law; according to plaintiff, the application of either law would prohibit the administratrix's use of the estate's assets to fund a will contest. The plaintiff additionally asserts, however, that, even if a conflict exists between Rhode Island law and Greek law, Greek law should apply under this Court's choice-of-law analysis because Greece has the most significant relationship to the dispute.

We begin by addressing whether a true conflict exists between Rhode Island law and Greek law. Determining whether a true conflict or disparity exists between the two fora's laws is the first step in our choice-of-law analysis, because, without such a conflict, there is no need to engage in a choice-of-law analysis. *See National Refrigeration, Inc. v. Standen Contracting Company, Inc.*, 942 A.2d 968, 973-74 n.8 (R.I. 2008) (holding that a choice-of-law analysis is not necessary where the parties fail "to articulate any disparity between the law" of the jurisdictions); *see also Avco Corporation v. Aetna Casualty & Surety Company*, 679 A.2d 323, 330 (R.I. 1996)

(holding that plaintiff's choice-of-law contention was "feckless" because the trial justice's finding would have been the same regardless of the law applied).

In the case at bar, plaintiff asserts that neither the law of Greece nor the law of Rhode Island permits the administratrix to use monies from the estate to pay for fees and expenses associated with a will contest. The plaintiff argues on appeal, as it did in Superior Court, that there is no statutory authority allowing for payment from estate assets of the expenses and counsel fees incurred in a will contest litigated outside of Rhode Island. Further, it asserts that such expenses are not necessary to the administration of the estate and therefore cannot be considered "part of administrative costs, or even an extension of administrative costs." Thus, plaintiff contends, there is no conflict between Greek law, which both parties acknowledge prohibits the use of estate assets for the purpose of financing a challenge to a will, and Rhode Island law.

In support of its position, plaintiff relies primarily on § 33-22-26, which states:

> "In cases contested before a probate court or on appeal from the probate court, costs and reasonable attorneys' fees in the discretion of the court may be awarded to either party to be paid by the other, or to either or both parties to be paid out of the estate which is the subject of the controversy, as justice may require. Any person petitioning or objecting to a petition shall be deemed to be a party of record in the matter in which he or she appears."

The plaintiff, however, reads the statute too narrowly. We first note that § 33-22-26 does not expressly limit an award of "costs and reasonable attorneys' fees" to cases litigated in Rhode Island. The statute contains no specific geographical limitation. Rather, the court is granted discretion to pay such expenses "out of the estate which is the subject of the controversy, as justice may require." Section 33-22-26. Thus, a probate court judge or a Superior Court justice on appeal is vested with broad authority to award attorneys' fees in "cases contested before *a probate court*" under § 33-22-26. (Emphasis added.)

Section 33-22-26 must be construed in the context of Rhode Island's long-standing and emphatic policy to protect estates from fraudulent claims. *See Andrews*, 2 R.I. at 119 ("The claims were doubtful, and it was his duty as administrator and agent of the heirs to interpose every legal objection that industry and care could furnish."); *see also Dailey v. Connery*, 75 R.I. 274, 280, 65 A.2d 801, 804 (1949) (the administrator or administratrix "is also the agent of the probate court whose function it is to protect estates against spurious claims of persons to participate in the distribution of the proceeds thereof").

In light of this policy, we are well-satisfied that § 33-22-26 does not limit the use of estate assets for the payment of litigation expenses to only those cases contested in Rhode Island. Accordingly, we conclude that, based upon the

arguments presented in the probate court and on appeal, there is a true conflict between Rhode Island law and Greek law.

We turn next to the application of this Court's "interest-weighing" approach to the choice-of-law analysis. *See Harodite Industries*, 24 A.3d at 534. In so doing, "we look at the particular facts and determine therefrom the rights and liabilities of the parties in accordance with the law of the state that bears the *most significant relationship* to the event and the parties." *Id.* (deletion omitted) (quoting *Cribb v. Augustyn*, 696 A.2d 285, 288 (R.I. 1997)). We utilize five policy considerations in order to make this determination: "(1) Predictability of results[;] (2) Maintenance of interstate and international order[;] (3) Simplification of the judicial task[;] (4) Advancement of the forum's governmental interests[;] (5) Application of the better rule of law." *Id.* (quoting *Woodward*, 104 R.I. at 300, 243 A.2d at 923).

With regard to the first consideration, predictability of results, the facts of the present case favor the application of Rhode Island law. The trial justice was correct in determining that "the [a]dministratrix has a duty to defend, protect, and preserve the assets of which some are located here in Rhode Island." Furthermore, because the case before us was initiated in a Rhode Island court, the parties should be able to expect Rhode Island law to apply to the case. Accordingly, the predictability-of-results factor favors the application of Rhode Island law.

- 14 -

We disagree with the trial justice's assessment of the second factor, maintenance of interstate and international order. Our review of the record indicates that this factor weighs in favor of applying Greek law. Here, the administratrix is utilizing funds from the estate to fund a will dispute in Greece, where, the record reveals, such a disbursement would not be allowed. Greece clearly has interest in the will contest, and, should a Greek court find the holographic will to be valid, that country's interest would be even greater. Thus, we believe, maintenance of international order favors applying the law of the forum where the will dispute is taking place—i.e., Greece.

The third factor, simplification of the judicial task, also favors Greek law. Under Rhode Island law, the probate judge would need to determine appropriate costs and attorneys' fees to be paid from the estate to the administratrix in order to fund the Greek litigation. *See* § 33-22-26. As the probate court order currently stands, the administratrix must seek approval from the probate judge to use funds from the estate, and she must allow plaintiff an opportunity to object to the same; under Greek law, the administratrix simply would be unable to use estate monies to fund the will dispute. Therefore, simplification of the judicial task favors the application of Greek law in this case.

The fourth and fifth factors, advancement of the forum's governmental interest and the better rule of law, however, both favor the application of Rhode

Island law.  We agree with the trial justice's analysis on this point to the effect that Greek law provides no protection, or use of estate monies, for administrators or administratrixes seeking to defend the estate from potentially fraudulent claims. Rhode Island law makes clear that this state's public policy supports putting "full faith and confidence" in an administratrix in carrying out her duties and that an administratrix has a duty to protect the estate against "spurious" claims. *See Dailey*, 75 R.I. at 280, 65 A.2d at 804.  Thus, the fourth and fifth factors favor the application of Rhode Island law.

In weighing the above factors and in examining the facts in the record of the case at bar, we conclude that Rhode Island has the most significant interest in adjudicating the dispute concerning the use of estate assets to fund the will contest in Greece.  Accordingly, we hold that the trial justice did not err in applying Rhode Island law.

Having determined that Rhode Island law applies, we next address whether the Superior Court judgment is consistent with Rhode Island law.  To do so, we first examine the trial justice's factual findings, all of which are supported by competent evidence in the record.

The trial justice initially noted in his decision that the decedent had obtained a bachelor's degree from Tufts University and a master's degree in library sciences from the University of Rhode Island.  Following a twenty-year career in the military,

she worked as a librarian. The trial justice also observed that, when the decedent purportedly drafted the holographic will in October 2013, "she had not yet been diagnosed with cancer and was in good health." Nevertheless, the will contained "obvious word misuse, grammatical errors, and poor punctuation[,]" which persuaded the trial justice "that such blatant errors by a person of high education cast doubt on the legitimacy of the document."

The trial justice was further troubled by the handwriting analysis and expert opinion produced by defendant that had concluded "that [the will] was 'fabricated' by a third party who wrote it much later than 2013." Recognizing that the legitimacy of the holographic will would ultimately be decided by the Greek courts, the trial justice nevertheless found that defendant had "provided enough circumstantial evidence that gives rise to a permissible inference of undue influence" and that "the [a]dministratrix is entitled to reasonable fees and costs associated with said administration, as she is entrusted with the fiduciary duty to defend any illegitimate action brought by third parties that might result in a loss of estate assets."

In light of the circumstances of this case, we discern no error in the trial justice's rulings. On October 28, 2015, Kendall, the decedent's cousin, was duly appointed administratrix of the estate by the Middletown Probate Court. At the time of her death, the decedent owned real property in both Rhode Island and Greece. On March 21, 2016, Michael, the administratrix's father and the decedent's next-of-kin,

filed a lawsuit in Greece challenging the validity of a holographic will that had been presented by plaintiff in that country's courts. Moreover, the evidence before the Superior Court strongly suggested that the will had been "fabricated" and that the decedent's signature was affixed at a later date. Clearly there was sufficient evidence before the Superior Court to warrant a reasonable inference of undue influence or otherwise cast the legitimacy of the holographic will into doubt.

That issue will be decided by the Greek courts. The question before us is whether the trial justice erred in allowing the administratrix to use the estate's assets to fund the estate's defense to the Greek litigation. Under Rhode Island law, the administratrix has a fiduciary duty to protect the estate from fraudulent and doubtful claims, and she is therefore entitled to the reasonable expenses associated with her administrative duty.[6] *See Andrews*, 2 R.I. at 118-19.

**IV**

**Conclusion**

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court with direction to remand the case to the Middletown Probate Court for proceedings consistent with this opinion.

Justice Goldberg did not participate.

---

[6] Because we have determined that the administratrix may use estate assets to fund the Greek litigation, we need not reach the issue of whether Rhode Island law allows for disgorgement.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | The Smile of the Child v. The Estate of Matoula Papadopouli. |
| **Case Number** | No. 2020-29-Appeal.<br>(NP 17-205) |
| **Date Opinion Filed** | April 11, 2022 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Kevin B. Murphy, Esq.<br>Brett L. Messinger, Esq., *Pro Hac Vice* |
| | For Defendant:<br><br>Peter Brent Regan, Esq. |